(Nos. 76775, 76776 cons.—

THE CITY OF ELGIN *et al.*, Appellees, v. THE COUNTY OF COOK *et al.*, Appellants.—THE VILLAGE OF BARTLETT *et al.*, Appellees, v. THE SOLID WASTE AGENCY OF NORTHERN COOK COUNTY, Appellant.

*Opinion filed November 2, 1995.—Rehearing denied January 29, 1996.*

NICKELS, J., joined by McMORROW, J., dissenting.

Jerome S. Schain, Thomas R. Burney, Glenn C. Sechen and Kerri L. McBride, of Schain, Firsel & Burney, and Julian C. D'Esposito, Jr., Michele Odorizzi and Russell R. Eggert, of Mayer, Brown & Platt, all of Chicago, for appellant Solid Waste Agency of Northern Cook County.

Jack O'Malley, State's Attorney, of Chicago (Karen A. Covy, Patricia M. Moser, William P. Motto and Jayman A. Avery III, Assistant State's Attorneys, of counsel), for appellant County of Cook.

David R. Akemann, State's Attorney, Patricia Johnson Lord, Assistant State's Attorney, and Timothy P. Dwyer, all of St. Charles, for appellee County of Kane.

Myron M. Cherry and Peter Flynn, of Cherry & Flynn, and Lee J. Schwartz, all of Chicago, Bryan E. Mraz and Edward Smith Mraz, of Bryan E. Mraz & Associates, of Roselle, and Erwin W. Jentsch and Kenneth F. Miles, both of Elgin, for appellees Village of Bartlett *et al.*

JUSTICE HEIPLE delivered the opinion of the court:

In 1988, elected officials from 28 of the municipalities in the Northwest Municipal Conference, representing approximately 950,000 Cook County residents, joined together to create the Solid Waste Agency of Northern Cook County (SWANCC). SWANCC is a municipal joint-action agency established by the Cook County board of commissioners (the Cook County board) pursuant to section 3.2 of the Intergovernmental Cooperation Act (5

ILCS 220/3.2 (West 1992); see also Ill. Const. 1970, art. VII, § 10). SWANCC was established to continue the process that had begun in 1982 by the Northwest Municipal Conference, a predecessor municipal joint-action body, to develop a comprehensive plan for the regional management of solid waste generated by the member communities.

Part of the comprehensive plan that SWANCC developed addresses recycling, composting and waste-reduction efforts designed to reduce the amount of solid waste its member communities must send to landfills by 40% to 45% by 1996. Another part of the plan is the construction of a landfill for municipal solid waste called a "balefill" because it is designed to dispose of solid waste that has been compacted into large bales. It is intended that the proposed balefill facility will be located within the 410 Cook County acres owned by SWANCC and not within the 123 contiguous Kane County acres also owned by SWANCC. The proposed site was previously zoned for industrial use and contains a now-defunct strip mine.

Because the proposed site is located in unincorporated Cook County, SWANCC applied to the Cook County zoning board of appeals in January 1987 for a special planned use development permit to construct the balefill on the site. Public hearings on the application began on March 26, 1987, and concluded on August 12, 1987. The Village of Bartlett, the Village of South Elgin and the City of Elgin objected, thus requiring that the permit be approved by greater than three-quarters of the Cook County board. The zoning board of appeals unanimously recommended approval of the application, and on November 16, 1987, the Cook County board granted preliminary approval for the special use permit, though it conditioned final approval on the issuance of a development permit by the Illinois Environmental Protection Agency (Agency) within two years.

On November 22, 1988, SWANCC then filed an application for a development permit with the Agency, wherein it had the burden of demonstrating that the balefill would comply with the environmental standards set forth in the Illinois Environmental Protection Act (the Act) and its various implementing regulations. The Agency held public hearings on the original balefill application on February 1989, and denied it on May 18, 1989. SWANCC then submitted a revised application which responded to the Agency's criticisms. The Agency held more public hearings at which certain of the plaintiff municipalities testified regarding their concerns about the effect of the balefill on the environment. On November 16, 1989, the Agency issued a permit to develop the site, though with the condition that SWANCC also receive the approval of any necessary Federal agencies.

With the condition of the issuance of the Agency permit satisfied, the Cook County board, on January 16, 1990, enacted an ordinance granting final zoning approval for the balefill. Because the plan for the balefill specifies that standing water in some of the mined areas be filled, SWANCC must also receive approval from the United States Army Corps of Engineers pursuant to the Clean Water Act. The Army Corps of Engineers has twice refused to issue the required permit and an appeal of this decision was filed with the District Court for the Northern District of Illinois on December 16, 1994 (Solid Waste Agency of Northern Illinois v. United States Army Corps of Engineers (N.D. Ill.), No. 94—C—7489), and is still pending.

Subsequent to the Cook County board's issuance of the final planned unit development permit for development of the balefill, separate complaints contesting the balefill were filed in both the Cook County and the Kane County circuit courts. SWANCC prevailed in the Cook

County suit and lost in the Kane County suit. Appeals were sought from both the Cook County and the Kane County trial court rulings and, upon SWANCC's motion, this court consolidated these appeals in the First District of the appellate court. Upon receiving the appellate decision (257 Ill. App. 3d 186), SWANCC petitioned this court for leave to appeal and various of the plaintiffs cross-appealed. This court granted leave to appeal pursuant to Supreme Court Rule 315 (145 Ill. 2d R. 315). For purposes of clarity, this opinion disposes of the Cook County and the Kane County lawsuits in separate sections.

### THE COOK COUNTY SUIT

On November 17, 1989, one day after the Agency issued the final Planned Unit Development (PUD) permit for the balefill, the City of Elgin, the Village of Bartlett, the Village of South Elgin, the Village of Wayne, and Hanover Township (the plaintiff municipalities) filed a five-count complaint against SWANCC and the Cook County board, seeking to overturn the county board's approval of a special use permit for the balefill.[1] The gravamen of the plaintiff municipalities' complaint is that the balefill ordinance was arbitrary and capricious; the procedures employed in approving the balefill ordinance were deficient; the balefill will cause environ-

---

[1] We note that the Cook County complaint ruled on by both the trial and appellate courts actually has seven counts. However, because the pertinent plaintiff municipality has not argued that the appellate court's affirmance of the trial court's dismissal of counts VI and VII was error, any related claims of error are waived for purposes of our review.

Also, though SWANCC, the Northwest Municipal Conference, the Cook County board and the Chicago Gravel Company (the seller of the land) are all named defendants in the Cook County complaint, we refer to defendants jointly as SWANCC for purposes of this opinion.

mental damage; and the balefill will economically injure the plaintiff municipalities in their corporate capacity.

SWANCC moved to strike the allegations of environmental harm on the ground that they constituted an impermissible collateral attack on the Agency's permitting decision. The circuit court of Cook County granted the motion and then, *sua sponte,* dismissed the entire complaint with prejudice and subsequently refused to allow the filing of an amended complaint. On appeal, the appellate court affirmed the dismissal of counts I, II, IV, V, VI and VII of the plaintiff municipalities' complaint, as well as the trial court's refusal to grant leave to file an amended complaint. (257 Ill. App. 3d 186.) However, the appellate court reversed the dismissal of count III, which it ruled stated a *prima facie* case of direct and adverse impact to the corporate capacity of the plaintiff municipalities such that they had standing to challenge the balefill zoning ordinance. 257 Ill. App. 3d at 194-97.

SWANCC appealed the appellate court's count III holding and the plaintiff municipalities sought cross-relief, seeking the reversal of the amended complaint ruling. For the reasons expressed below, we reverse the appellate court's count III holding and affirm its holding that the trial court properly denied leave to file an amended complaint.

### I. Count III of the Cook County Complaint

The Pollution Control Board and Illinois Environmental Protection Agency are charged by the General Assembly with implementing the Environmental Protection Act. The Pollution Control Board establishes environmental standards and regulations and also adjudicates enforcement matters. (415 ILCS 5/5 (West 1992).) The Agency considers and applies these regulations in a variety of contexts, including its decisions to issue development and operation permits for pollution

control facilities such as the instant balefill. (415 ILCS 5/4 (West 1992).) Only after an applicant such as SWANCC proves that a facility will not cause a violation of the Act or of the regulations can the Agency issue a development permit. (415 ILCS 5/39 (West 1992); 35 Ill. Adm. Code § 807.101 *et seq.* (1994).) To assist it in its evaluations, the Agency employs a staff of experts from various disciplines to consider and monitor, *inter alia*, air, noise and water pollution as well as groundwater quality.

Significantly, plaintiffs are statutorily precluded from legally challenging the Agency's decision to grant a development permit for a pollution control facility.[2] An Agency decision granting a permit cannot be appealed to the Pollution Control Board, which is only authorized to hear appeals where the Agency denies a permit or grants only a conditional permit. (415 ILCS 5/40(a)(1) (West 1992).) Further, the Act only authorizes judicial review of Pollution Control Board permitting decisions, and not Agency permitting decisions. (415 ILCS 5/41(a) (West 1992).) Consequently, judicial review of Agency decisions granting development permits for solid waste disposal sites is precluded and the instant plaintiffs cannot challenge the Agency's decision to grant the balefill development permit.

Yet, what the plaintiff municipalities cannot do directly they attempt to do indirectly through their com-

---

[2]We note that the Illinois Environmental Protection Act was amended effective December 22, 1994. (Pub. Act 88—681, § 25, eff. December 22, 1994.) Among the changes to the Act was the deletion of the word "regional" from the term "regional pollution control facility." (See 415 ILCS 5/39.2 (West 1992).) Consequently, we refer to such facilities as pollution control facilities and not regional pollution control facilities.

Our review of Public Act 88—681 does not suggest that this amendment to the Act substantively impacts the outcome of our decision today, nor have the parties suggested otherwise.

plaint challenging the Cook County board's zoning ordinance authorizing the siting and development of the balefill. Count III of the plaintiff municipalities' complaint is titled "Failure of the Proposed Plan to Meet Standards For Preliminary PUD Plat Approval," and alleges that the Cook County board's ordinance approving the siting of the balefill was arbitrary, capricious and unreasonable. The matters complained of in count III can be divided into three general categories: (1) Cook County's failure to abide by its own ordinances in approving the balefill; (2) Cook County's abdication of its responsibility to consider the deleterious environmental impact of the proposed balefill in that it conditioned its approval on the issuance of an Agency development permit; and (3) the deleterious environmental and economic impact of the balefill to the plaintiff municipalities in their corporate capacity. Our consideration of count III leads us to conclude that the circuit court was correct in dismissing count III with prejudice.

*A. Alleged Failure to Adhere to the Cook County Ordinances in Passing the Balefill Ordinance*

Count III alleges in large part that Cook County failed to follow various of its own ordinances in approving the balefill ordinance. Even if this were true, however, plaintiffs could not successfully challenge Cook County's balefill ordinance. In evaluating the balefill ordinance, we must keep in mind the broad powers of home rule units of government such as Cook County. Article VII, section 6(a), of the Illinois Constitution of 1970 provides in pertinent part:

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare ***." (Ill. Const. 1970, art. VII, § 6(a).)

Moreover, article VII, section 6(m), provides that the powers and functions of home rule powers are to be construed broadly. Ill. Const. 1970, art. VII, § 6(m).

Indeed, this court has concluded that home rule units have all the powers of the sovereign, limited only by the constitution itself and the General Assembly. (*City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 273.) From this it follows that,

> "[t]his court cannot handle matters which in effect are attempts to overrule decisions of a legislative body based upon alleged failure to follow requirements imposed by that body on itself. *** We have authority to invalidate legislation *** only upon grounds that the enactment violates a provision of the Federal or State constitutions or violates the mandate of a State or Federal statute." (*Landmarks Preservation Council of Illinois v. City of Chicago* (1988), 125 Ill. 2d 164, 179, citing *Chirikos v. Yellow Cab Co.* (1980), 87 Ill. App. 3d 569, 574.)

(Accord *In re Application of the County Collector of Kane County* (1989), 132 Ill. 2d 64, 74-75 (failure of home rule unit to comply with its own ordinance fatal only if said ordinance is mandatory).) Thus, insofar as plaintiffs have not alleged any violation of an applicable statute or constitutional provision, the trial court was correct in dismissing, with prejudice, the portions of count III alleging injury resulting from Cook County's alleged failure to comply with its own ordinances in approving the balefill ordinance.

### B. Alleged Abdication of Responsibility in Failing to Consider the Environmental Impact of Balefill

Count III further alleges injuries resulting from the Cook County board's abdication of its responsibility to consider the deleterious environmental impact of the proposed balefill where, instead of conducting its own environmental studies, it granted a preliminary permit conditioned upon the Agency's approval and issuance of a development permit. In support, the plaintiff munici-

palities cite to section 39(c) of the Act, which mandates that county boards approve the siting of solid waste facilities in unincorporated portions of their counties. 415 ILCS 5/39(c) (West 1992).

The Act was amended in 1981 to require local government siting approval as a precondition to the issuance of an Agency permit. (415 ILCS 5/39(c) (West 1992).) Prior to the amendment, this court had ruled that zoning ordinances of non-home-rule units of local government related to facilities governed under the Act were preempted by the Act. (See *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 514-15.) The amendment overruled this decision and made clear all units of local government, home rule and non-home-rule alike, have concurrent jurisdiction with the Agency in approving siting, because section 39(c) now requires local government approval of all proposed pollution control facilities.

This concurrent jurisdiction, however, does not require that the Cook County board act as a local environmental protection agency in considering a proposed site, thus duplicating the exhaustive efforts of the Agency in assessing the environmental impact of a proposed pollution control facility. In their contrary argument, the plaintiff municipalities point to section 39.2(a) of the Act, which sets forth exclusive siting requirements that local units of government must consider in deciding whether to approve the siting of a pollution control facility. However, Cook County is specifically exempted from this and all other siting provisions of section 39.2 by section 39.2(h) (415 ILCS 5/39.2(h) (West 1992) ("[n]othing in this Section shall apply to any *** new *** pollution control facility located within an unincorporated area of any county having a population of over 3,000,000")).

Thus, while nothing precludes the Cook County

board from considering the section 39.2(a) siting factors, all the Act requires the board to consider is whether, in its judgment, the waste facility should be placed on the proposed site. (415 ILCS 5/39(c) (West 1992).) This the Cook County board did. That the Cook County board further chose to rely upon the Agency's environmental expertise in conditioning its final PUD permit on Agency approval is in no way an abdication or delegation of its duty under section 39(c), which does not require that Cook County consider such matters in the first place. Thus, we conclude that the circuit court was correct in dismissing count III of the complaint to the extent it was premised upon any section 39(c) abdication-of-duty theory.

### C. Allegation that Decision to Approve Zoning was Arbitrary, Capricious and Unreasonable

The final category of harm alleged in count III is that the approval of the balefill was arbitrary, capricious and unreasonable in that the balefill will harm the environment and cause economic injury to the plaintiff municipalities.

As regards the alleged damage to the environment, we hold that these allegations constitute an impermissible collateral attack on the Agency development permit approving the balefill. (See 415 ILCS 5/40(a)(1) (West 1992).) Though the plaintiff municipalities contend that they are not attacking the Agency's decision to grant the permit but, rather, the Cook County board's zoning ordinance granting the permit, this distinction does not withstand scrutiny.

As noted earlier, the decision of the Agency to grant a development permit is appealable neither to the Pollution Control Board nor to our State courts. (415 ILCS 5/40(a)(1) (West 1992).) In approving the instant zoning ordinance, the Cook County board conditioned its approval on the Agency's issuance of a development

permit, a reliance entirely consistent with the Act's goal of uniformity in establishing a statewide agency with the technical expertise to uniformly apply rules and regulations to safeguard the environment. (415 ILCS 5/2(b) (West 1992).) Thus, we conclude that the Cook County board's environmental assessments, to the extent they are dependent upon the Agency's expertise and issuance of a development permit, far from being arbitrary, capricious or unreasonable, are entirely appropriate and not subject to attack in the courts of our State.

Secondly, the plaintiff municipalities assert that the balefill ordinance is arbitrary, capricious and unreasonable because the plaintiff municipalities will be economically injured by the balefill. In support the complaint alleges, *inter alia*, that the balefill will lead to more traffic, which will cause increased road maintenance and traffic control expenditures and that the balefill will diminish or impair property values such that there will be a decrease in property tax revenues.[3]

The appellate court found that these alleged economic injuries, in conjunction with the environmental allegations discussed above, were sufficient to confer standing to challenge the Cook County zoning ordinance approving the balefill. In support, it cited this court's decisions in *Village of Barrington Hills v. Village of Hoffman Estates* (1980), 81 Ill. 2d 392, 396-97, and *City*

---

[3]We note that the Cook County ordinance approving the siting and development of the balefill site, on its face, addresses the impact of the balefill on the surrounding roads as well as the possibility of reduced property values. Therein, it calls for the development and utilization of roads in such a manner as to minimize any traffic control and other related problems caused by increased traffic. As for the diminution of property values, the ordinance requires SWANCC to reimburse sellers of nearby residences that recover less than they would otherwise have recovered because of the siting of the balefill.

*of Hickory Hills v. Village of Bridgeview* (1977), 67 Ill. 2d 399, 402-03, which held that a municipality has standing to sue another municipality over its zoning decisions where it has a real interest in the controversy, the test being whether the municipality will suffer a direct and adverse injury. Because the injuries alleged in count III are similar to those deemed sufficient to confer standing in *Village of Barrington Hills*, the appellate court concluded that the plaintiff municipalities had standing to challenge the balefill ordinance. We disagree.

Initially, we observe that the zoning decisions in *City of Hickory Hills* and *Village of Barrington Hills* did not involve the siting of a solid waste disposal facility and did not otherwise implicate the Illinois Environmental Protection Act. Thus, those zoning decisions were not subject to the host of environmental regulations and agency reviews mandated by the Act. This distinction, coupled with our review of the history and pertinent portions of the Act, leads us to conclude that the instant plaintiff municipalities lack standing to challenge Cook County's balefill ordinance.

In adopting the Act, our legislature intended to address the environmental problems of the State on a unified statewide basis. (415 ILCS 5/2(a)(ii) (West 1992).) This goal of unified statewide enforcement extends to, *inter alia*, air and water pollution, noise, public water supply and, not insignificantly, solid waste disposal. (415 ILCS 5/2(a)(iii) (West 1992).) In furtherance of this goal, the Act was amended in 1981 to require local government approval of pollution control sites as a precondition to the issuance of an Agency development permit. (415 ILCS 5/39(c) (West 1992).) The 1981 amendments to the Act also provided an exclusive list of criteria that local units of government must consider in deciding whether to approve the proposed siting of a pollution

control facility. (415 ILCS 5/39.2(a)(i) through (a)(ix) (West 1992).) Additionally, the 1981 amendments provide that local government decisions approving the siting of pollution control facilities are appealable to the Pollution Control Board. (415 ILCS 5/40.1(b) (West 1992).) Any "party" adversely affected by a final order or determination of the Pollution Control Board may appeal directly to the appellate court, bypassing the circuit court. 415 ILCS 5/41(a) (West 1992).

If the application and review scheme outlined above were applicable to the instant case, the plaintiff municipalities could only have appealed the Cook County siting ordinance to the Pollution Control Board. (415 ILCS 5/40.1(b) (West 1992).) If the Pollution Control Board were then to affirm the Cook County siting ordinance, the plaintiff municipalities arguably would not have any right to further appeals to the courts of this State. While section 40.1(b) authorizes third-party objectors to appeal county board siting decisions to the Pollution Control Board, it is unclear whether these third parties are "parties" with standing to appeal adverse Pollution Control Board decisions to the appellate court pursuant to section 41(a)(1). (See 415 ILCS 5/39.2(g), 40.1(b), 41(a)(1) (West 1992).) If not, appeals by third-party objectors such as the instant plaintiff municipalities would not lie beyond the Pollution Control Board insofar as section 41(a)(1) is the sole section authorizing judicial review.

However, though illustrative of the potentially limited review procedures contemplated by the legislature when it amended the Act to require local siting approval, the application and review scheme delineated above is not applicable to the instant case. While Cook County must approve the siting of pollution control facilities pursuant to section 39(c) of the Act, it is otherwise exempted from the siting criteria of section

39.2 by section 39.2(h) (415 ILCS 5/39.2(h) (West 1992)). Thus, there can be no appeal of Cook County siting decisions to the Pollution Control Board insofar as appeals thereto lie only from siting decisions made pursuant to section 39.2, from which Cook County is exempt. (415 ILCS 5/40.1(b) (West 1992).) Likewise, the judicial review provisions of section 41(a)(1), which authorize appeals to the appellate court, are also inapplicable to the instant case given that judicial review is only contemplated for party appeals from adverse siting decisions of the Pollution Control Board. 415 ILCS 5/41(a) (West 1992).

Unfortunately, while section 39.2(h) exempts Cook County from the siting and review provisions found in the Act, it does not indicate whether Cook County board siting decisions are otherwise subject to review and, if so, by what body and pursuant to what standards. (415 ILCS 5/39.2(h) (West 1992).) Likewise, our review of the legislative history surrounding the adoption of the Cook County board exemption sheds no light on this issue. Fortunately, however, the underlying purpose of the Act does provide some guidance in determining whether Cook County board siting decisions are reviewable.

As noted earlier, the Act is intended to facilitate the creation of a uniform statewide environmental policy. (415 ILCS 5/2(a)(iii), (b) (West 1992).) Part of this policy necessarily entails the establishment and regulation of environmentally sound pollution control facilities such as the instant balefill, for while recycling efforts are becoming more common, the fact remains that the efficient disposal of municipal waste is an increasingly serious problem in Illinois. See 415 ILCS 5/2 (West 1992) (legislative declaration).

Given the pressing need for pollution control facilities, the Act encourages the development of environmentally sound facilities through the establishment of a uniform, statewide environmental policy dealing with

such facilities. (See 415 ILCS 5/2(a)(iii) (West 1992).) With this goal in mind, it would be anomalous to allow third parties such as the instant plaintiff municipalities to challenge local zoning ordinances authorizing the siting of regional pollution control facilities. This is particularly so where the applicant is a municipal joint-action agency established pursuant to the Intergovernmental Cooperation Act and with the express purpose of developing a waste management plan for northern Cook County. 5 ILCS 220/3.2 (West 1992).

Indeed, if extraterritorial challenges by third-party municipalities are allowed in the courts of this State, it is unlikely that any significant landfill, regardless of how necessary and environmentally sound, will ever again be developed in Illinois.[4] As evidenced in the instant case, no matter where a landfill is sited, neighboring units of local government not participating in the landfill's development will typically employ their considerable legal arsenals to prevent indefinitely the development of such facilities.[5] Thus, where the appropriate unit of local government approves the siting of a pollution control facility pursuant to section 39(c), and that facility is contained solely within that unit's own geographic boundaries, we hold that extraterritorial third-party challenges to these siting decisions to the courts of this State are incompatible with the purposes of the Act.

Our conclusion is further bolstered by our consideration of section 31 of the Act, which authorizes various

---

[4]According to SWANCC, there have been seven lawsuits thus far concerning the proposed balefill. We can and do take judicial notice of the considerable resources expended in both time and money in bringing and defending these lawsuits.

[5]Indeed, we note that the frequency of lawsuits contesting the development of facilities governed under the Act are such that they have acquired their own acronym: "NIMBY," or "not in my back yard" lawsuits.

persons to file enforcement actions against persons who violate environmental regulations. Section 31(a) allows the Agency to initiate an enforcement action. (415 ILCS 5/31(a) (West 1992).) Section 31(b) is broader and grants "any person" the right to file a complaint with the Pollution Control Board against any person allegedly violating the Act. (415 ILCS 5/31(b) (West 1992).) Moreover, to protect against inaction by the Pollution Control Board or the Agency, the legislative scheme permits State's Attorneys and the Attorney General to file civil actions, authorizing them to seek injunctive relief where necessary. (415 ILCS 5/43(a) (West 1992).) Likewise, persons who file a section 31(b) complaint with the Pollution Control Board but who are not satisfied with the results can appeal to the circuit court. (415 ILCS 5/45(b) (West 1992).) Thus, it is clear that if at any point the balefill actually threatens the environment, as contended in many of the *in futuro* allegations of the Cook County complaint, adequate safeguards are provided to, at that point, stop any further development and/or operation of the balefill. (See *Stark v. Pollution Control Board* (1988), 177 Ill. App. 3d 293.) In the interim, however, we conclude that local ordinances approving the siting of a pollution control facility pursuant to section 39(c) are not subject to extraterritorial challenges by other units of local government.

## II. Refusal to Allow Plaintiff Municipalities to File an Amended Complaint

Finally, we must consider the trial court's refusal to allow the plaintiff municipalities to file an amended complaint. Leave to amend should generally be granted unless it is apparent that even after amendment no cause of action can be stated. In determining whether a trial court abused its discretion in refusing to allow an amended complaint, we look to the following factors: (1) whether the proposed amended complaint would cure

the defects of the dismissed pleading; (2) whether the amendment would prejudice or surprise the other parties; (3) whether the proposed amendment was timely; and (4) whether previous opportunities to amend the pleading can be identified. (*People ex rel. Hartigan v. E&E Hauling, Inc.* (1992), 153 Ill. 2d 473, 505.) In applying these factors to the instant case, we note that the appellate court correctly determined that the plaintiff municipalities' proffered amended complaint did not add any additional claims but, rather, merely reorganized the allegations of the original complaint and added facts to reinforce its position that there was standing to sue under *Village of Barrington Hills v. Village of Hoffman Estates* (1980), 81 Ill. 2d 392, and *City of Hickory Hills v. Village of Bridgeview* (1977), 67 Ill. 2d 399. However, as we have already observed, the rule in these cases that extraterritorial municipalities have standing to challenge the zoning decisions of other municipalities is inapplicable to siting ordinances made pursuant to the Act. Thus, we conclude that the proffered amended complaint did not cure the defects of the original and that the appellate court properly affirmed the trial court's ruling denying leave to file the amended complaint.

## KANE COUNTY COMPLAINT

While the appeal of the Cook County action was pending, the Village of Bartlett, the City of Elgin, an organization named "Citizens Against the Balefill," and William C. McHugh (hereinafter jointly referred to as the original plaintiffs) filed a separate action in the circuit court of Kane County against SWANCC.[6] Like the Cook County complaint, the Kane County complaint

---

[6]Only SWANCC, and not the Cook County board of commissioners, the Northwest Municipal Conference or the Chicago Gravel Company, is named as a defendant in the Kane County suit.

alleged various environmental injuries, some of which mirrored those of the Cook County complaint, and, for relief, sought that all balefill-related construction be halted until such time as SWANCC received the required section 404 permit from the Army Corps of Engineers.

On February 11, 1991, the circuit court of Kane County entered a temporary restraining order prohibiting SWANCC "from cutting down any trees on, or otherwise damaging, the 543-acre tract of land known as the 'balefill site,' until further order of this court." Four days later SWANCC moved to transfer venue to Cook County and to dismiss the action. Shortly thereafter, the Kane County State's Attorney (hereinafter, intervening plaintiff) was granted leave to intervene, adopted the already filed complaint, and was given leave to amend the complaint by the addition of a new count.

The Kane County circuit court heard arguments on SWANCC's motion to dismiss the complaint and/or transfer venue and set May 28, 1991, as the ruling date. Five days before the ruling date, the Kane County State's Attorney appeared by substituted counsel and filed his amendment to the complaint which challenged the balefill ordinance on the grounds that Kane County approval was required under section 39.2 of the Act because part of the balefill "site" was located in Kane County.[7] SWANCC moved to dismiss this complaint and reiterated its motion to transfer venue to Cook County.

---

[7]Interestingly, the Kane County State's Attorney made this very claim in a 1989 suit challenging the balefill brought against SWANCC, the Agency and the Agency's director. Therein it was alleged that the 123 acres owned by SWANCC in Kane County would be used for storm-water retention and wetlands mitigation for the balefill and therefore constituted part of the landfill site for purposes of section 39.2(c) of the Act. Thus, the State's Attorney argued that SWANCC needed the siting approval of Kane County before the Agency could issue a permit. The Kane County State's

The Kane County circuit court issued an opinion letter on June 18, 1991, wherein it dismissed all the counts of the complaint except the one-count amendment filed by the Kane County State's Attorney. The court then ruled that the amended count "does state a cause of action." Accordingly, the court continued the temporary restraining order already in effect and gave the original plaintiffs 28 days to file an amended complaint.

Upon receiving the court's order, SWANCC moved for the dissolution of the temporary restraining order, arguing that the remaining allegations of the complaint could not justify the issuance of an injunction against balefill activity in Cook County. SWANCC argued that any failure to secure siting approval from Kane County could at best justify an injunction against construction-related activities on the Kane County portion of the site. SWANCC was unable to get a hearing on this motion until July 30, 1991, at which time the trial court denied the motion without prejudice and the original plaintiffs were allowed to file their amended complaint.

SWANCC moved to dismiss the amended complaint and moved, once again, to dissolve the temporary restraining order. On August 9, 1991, the trial court denied the motion to dissolve the temporary restraining order. SWANCC then appealed the court's orders of July 30, 1991, and August 9, 1991, to the Second District of the appellate court.

This court consolidated the Cook County and Kane County appeals in the First District upon SWANCC's motion. Regarding the Kane County suit, the appellate court ruled that it lacked appellate jurisdiction to

---

Attorney ultimately accepted the Agency's view and voluntarily dismissed the suit upon SWANCC's submission of a revised permit application demonstrating that the Kane County property would not be used for any balefill-related purpose, including stormwater retention and wetlands mitigation.

consider SWANCC's venue argument because SWANCC did not appeal the venue ruling at the time it was made. The appellate court then affirmed the Kane County court's refusal to dissolve the temporary restraining order. For the reasons expressed below, this court reverses the appellate court's ruling upholding the temporary restraining order.

I. Count I of the Intervening Plaintiff's Complaint

The appellate court premised its decision to affirm the temporary restraining order issued by the Kane County circuit court on its determination that there was a "fair question" that SWANCC failed to obtain Kane County siting approval of the balefill as required by section 39(c) and that it failed to notify certain owners within 250 feet of the request for location approval as required by section 39.2(b) of the Act.[8]

*A. Allegation That Kane County Siting Approval Is Required by Section 39(c)*

As regards the alleged failure to obtain Kane County siting approval, section 39(c) of the Act provides in pertinent part:

"[N]o permit for the development or construction of a new regional pollution control facility may be granted by the Agency unless the applicant submits proof to the Agency that the location of said facility has been approved by the County Board of the county if in an unincorporated area ***." (415 ILCS 5/39(c) (West 1992).)

Thus, whether Kane County's approval of the location of the balefill was required in addition to that of Cook

---

[8]SWANCC argues that the appellate court erroneously applied a less stringent standard of review in upholding the temporary restraining order. We do not reach this question in that we hold, as a matter of law, that the allegations in the complaint filed against SWANCC are insufficient under any standard to justify enjoining SWANCC's preliminary construction activities.

County depends upon whether that facility is located in an unincorporated portion of Kane County.

SWANCC argues that the Kane County acreage it owns is not part of the balefill pollution control facility and that Kane County siting approval is thus not required under section 39(c) of the Act. In support, SWANCC acknowledges that its initial request for a balefill development permit to the Agency proposed utilizing the 123 Kane County acres for water retention and wetland mitigation purposes. However, after this permit request was denied, SWANCC amended its proposed balefill plan to, *inter alia,* no longer make use of the Kane County acreage for water retention or any other balefill-related purpose. It was this latter plan that was ultimately approved by the Agency and for which a development permit was issued. Thus, SWANCC asserts that Kane County siting approval is unnecessary under section 39(c) of the Act.

Kane County first counters that it does not believe the representations by SWANCC, or for that matter the plans submitted to and approved by the Agency, to the extent they show that no balefill-related activity will take place on the Kane County property. Apart from its bare assertion of distrust, however, Kane County points to no evidence indicating that SWANCC plans to utilize the Kane County property in a manner that would require Kane County approval pursuant to section 39(c). While we agree that Kane County approval would be necessary were the balefill facility to be developed in part on the Kane County property, we will not engage in speculation regarding this contention. Rather, our determination is based solely on the extensive record in this case which evidences that, as of the submission of the second permit application to the Agency, there is neither a plan specifying nor approval for the utilization of the Kane County property as a part of the proposed pollution control facility.

Kane County further argues that, as contiguous land, the Kane County acreage is part of a pollution control "facility" as defined for purposes of the Resource Conservation and Recovery Act (RCRA) (42 U.S.C. § 6921 *et seq.* (1988); 40 C.F.R. § 258.2 (1994)). From this, the intervening plaintiff reasons that the Kane County acreage must also be part of the pollution control facility for purposes of section 39(c)'s local siting requirement because the RCRA establishes minimum guidelines for State governments in enacting laws governing municipal waste sites. The intervening plaintiffs thus conclude that the RCRA "facilities" definition, which includes contiguous land, should control this court's decision in defining "facility" for purposes of section 39(c) siting approval. Thereunder, the contiguous Kane County acreage would be part of the balefill facility and Kane County siting approval would be required.

However, in support of this argument, the intervening plaintiff cites cases which address the liability of facility owners who have violated the environmental laws as regards contiguous land that has become polluted. (See *People v. Teledyne, Inc.* (1992), 233 Ill. App. 3d 495; *United Technologies Corp. v. United States Environmental Protection Agency* (D.C. Cir. 1987), 821 F.2d 714; *State v. Presto-X Co.* (Iowa 1987), 417 N.W.2d 199; *People v. Roth* (1985), 129 Misc. 2d 381, 492 N.Y.S.2d 971.) None of these cases, however, hold that contiguous but unrelated land is part of a municipal waste facility for other purposes such as siting approval.[9] Moreover, as noted by the Court of Appeals in *United Technologies Corp. v.*

---

[9]Plaintiff does not cite this court to any provision of the RCRA which requires State environmental laws to provide for local siting approval. Indeed, we note that prior to the 1981 amendments to the Illinois Environmental Protection Act, local siting approval was not even required and this, apparently, did not violate the minimum guidelines established for the States by the RCRA regarding municipal waste facilities.

*United States Environmental Protection Agency* (D.C. Cir. 1987), 821 F.2d 714, 722, the definition of the word "facility" is contextual, varying from provision to provision in the RCRA. Insofar as the cases cited to this court are inapposite to the issue at hand, and further given that the RCRA does not require local siting approval in the first place, we find Kane County's contiguous land/ facilities argument without merit and conclude that SWANCC's mere ownership of the Kane County acreage does not make this acreage part of the balefill for purposes of section 39(c).

### B. Allegation That SWANCC Failed to Provide the Proper Notice Under Section 39.2(b)

Kane County next argues that the Agency was without jurisdiction to issue the development permit because SWANCC did not provide the requisite notice to surrounding landowners pursuant to section 39.2(b) of the Act (415 ILCS 5/39.2(b) (West 1992)). However, section 39.2 by its own terms does not apply to pollution control facilities located within unincorporated Cook County. (415 ILCS 5/39.2(h) (West 1992) ("[n]othing in this Section shall apply to any *** new *** pollution control facility located within an unincorporated area of any county having a population of over 3,000,000").) As noted above, the development plans for the balefill approved by the Agency do not indicate any balefill-related uses for the Kane County property. Accordingly, we hold that SWANCC is exempted from the notice provisions of section 39.2(b) and that the Agency thus had jurisdiction to issue the development permit.

### II. Count II of Intervening Plaintiff's Amended Complaint

Insofar as this court finds count I of the intervening plaintiff's amended complaint insufficient as a matter of

law to support the injunction, this court must consider count II of the Kane County complaint, the merits of which the appellate court did not reach. Count II in essence argues that if the balefill is developed an array of environmental harms will result. We find that, as with the claims of environmental harm alleged by the Cook County plaintiff municipalities, Kane County's claims of potential harm are likewise an impermissible collateral attack on the Agency's permitting decision.

In issuing the development permit, the Agency determined that the balefill development plan comports with the entire range of environmental regulations governing the development of such facilities which seek to ensure they do not harm the environment. As we noted earlier, the Cook County board reasonably and lawfully relied on the Agency's environmental assessment in issuing its final planned use development permit for the balefill. Thus, any claims of environmental harm by Kane County at this juncture constitute an attempt to second-guess the Agency, which is not permitted under the Act.

Moreover, we note once again that the Act authorizes private persons, the Agency, the various State's Attorneys and even the Attorney General to file enforcement actions against parties who violate environmental regulations. (415 ILCS 5/31(b), 43(a), (b) (West 1992).) Thus, it is clear that if at any point the balefill or its development actually threatens the environment, as contended in the *in futuro* allegations of the Kane County and Cook County complaints, adequate safeguards exist to at that point stop any further development and/or operation. (See *Stark v. Pollution Control Board* (1988), 177 Ill. App. 3d 293.) In the interim, however, we conclude that Kane County's allegations of environmental harm are premature and constitute an impermissible collateral attack on the Agency's decision to issue a development permit.

### III. Original Kane County Plaintiffs' Amended Complaint

As with count II of the intervening plaintiff's amended complaint, the appellate court also did not reach the merits of the original plaintiffs' amended complaint in affirming the injunction. Therein, the Village of Bartlett, the City of Elgin, a group known as the "Citizens Against the Balefill" and William McHugh, an Evanston resident, filed a five-count complaint alleging that until such time as SWANCC is successful in reversing the Army Corps of Engineers' decision not to issue a section 404 permit, SWANCC may not engage in any preliminary construction activity such as the felling of trees or the drilling of monitoring wells.

Notwithstanding some overlap in the allegations contained within the five counts, they basically break down as follows:

count I: that pre-section 404 permit preliminary construction has no valid public purpose and constitutes an impermissible *ultra vires* act;

count II: that pre-section 404 permit preliminary construction is an impermissible attempt to circumvent the Clean Water Act;

count III: that pre-section 404 permit preliminary construction is an impermissible unlawful expenditure of public funds;

count IV: that pre-section 404 permit preliminary construction is an impermissible nuisance; and

count V: that pre-section 404 permit preliminary construction impermissibly violates SWANCC's fiduciary duty to hold the balefill site in trust for the benefit of the public.

### A. Counts I, II and III of the Original Plaintiffs' Amended Complaint

Counts I and III of the original Kane County plaintiffs' amended complaint contend that the preliminary construction activities at issue would be *ultra vires* in nature and would otherwise constitute the unauthorized

and unlawful expenditure of public funds.[10] In support of both these contentions, the original plaintiffs argue that in the absence of the required section 404 permit, SWANCC, an intergovernmental agency established to bring about the "efficient and environmentally sound collection, transportation, processing, storage and disposal of municipal waste," is without the authority to engage in preliminary balefill-related construction. They argue that any such activity would violate the Clean Water Act, which prohibits any balefill-related activity without the required section 404 permit. Thus, the original plaintiffs conclude that any such construction would be *ultra vires* in nature and an unlawful expenditure of public funds.

SWANCC counters that it is an agency established pursuant to the Intergovernmental Cooperation Act and whose charter authorizes it to, *inter alia*, plan, construct and manage waste facilities to serve the member municipalities. Moreover, SWANCC notes that this general grant of authority nowhere sets forth that SWANCC cannot engage in preliminary tree-felling or monitoring activities without first obtaining all the required permits to develop the anticipated waste disposal facility. The decision to engage in such preliminary activities, according to SWANCC, is a discretionary one made in anticipation of eventually acquiring the section 404 permit. As such, SWANCC argues that it is not subject to attack as being *ultra vires* or an unauthorized or unlawful expenditure of public resources.

We agree with SWANCC that it is within its discretion to engage in preliminary construction activities in

---

[10]Though it is not at all clear which, if any, of the original plaintiffs have standing to assert these two claims, we reach the merits insofar as neither of these claims is otherwise sufficient, as a matter of law, to justify enjoining SWANCC's preliminary construction activities.

preparation of its ultimate goal of developing and operating the balefill. How SWANCC, charged with the development of municipal waste facilities, goes about achieving this goal is a matter for SWANCC's discretion to the extent that its activities do not violate any State or Federal laws and is otherwise consistent with its charter. (*Chicago Allis Manufacturing Corp. v. Metropolitan Sanitary District of Greater Chicago* (1972), 52 Ill. 2d 320, 328 (the wisdom of the means chosen to accomplish a lawful end is a judgment for the legislature to make).) What the original plaintiffs are essentially asking this court to rule is that SWANCC cannot engage in activities not precluded by any Federal or State law because it is "not a good idea." This we will not do. Regardless of this court's assessment whether SWANCC will eventually obtain the section 404 permit, we will not sit as a superlegislature and second-guess the decisions of SWANCC to the extent they reasonably purport to achieve a legitimate purpose in a lawful manner.

In count II of the original plaintiffs' amended complaint, however, they assert that the preliminary construction activities at issue, the felling of trees and the drilling of monitoring wells, is unlawful because doing so violates section 404 of the Clean Water Act (33 U.S.C. § 1344 (1988); 40 C.F.R. § 230 (1994)). This argument, however, does not withstand scrutiny. Section 404 of the Clean Water Act, in pertinent part, requires that the Army Corps of Engineers issue a permit before any standing waters can be filled in conjunction with the development and/or operation of a waste disposal facility. (40 C.F.R. § 230.1 (1994).) While the standing waters cannot be filled without the required section 404 permit, this is not the case regarding the felling of trees or the drilling of monitoring wells. Neither of these activities has anything to do with filling waterways subject to the protections of the Clean Water Act, and thus, whether

SWANCC has procured the required section 404 permit has no bearing on the lawfulness of these preliminary construction activities. Consequently, we hold that counts I, II and III of the original plaintiffs' amended complaint are insufficient as a matter of law to serve as the basis for a temporary restraining order.

### B. Count IV of the Original Plaintiffs' Amended Complaint

In their briefs before this court, the original plaintiffs state that count IV of their amended complaint alleges that "SWANCC's damaging of the [balefill] site solely in order to pursue a legally prohibited purpose would constitute the creation of a nuisance." Here again, however, we note that the felling of trees and drilling of monitoring wells is not precluded by either the Agency permit or the denial of the section 404 permit request, or for that matter any other law cited to this court. Moreover, such activities are entirely consistent with SWANCC's statutory purpose, i.e., the establishment of a waste disposal site on the property in question. Thus, insofar as the original plaintiffs premise their nuisance claim on SWANCC's unlawful activity, count IV cannot sustain the imposed injunction because the very activity complained of is in no way unlawful.[11]

### C. Count V of Original Plaintiffs' Amended Complaint

Count V of the original plaintiffs' amended complaint argues that SWANCC holds the balefill site prop-

---

[11]We note also that the original plaintiffs' complaint somewhat haphazardly, and not in a separate count, alleges injuries with respect to the Village of Bartlett and the City of Elgin which mirror those alleged by the very same plaintiffs in the Cook County complaint, i.e., that the balefill will have a direct and adverse impact on its roads, property tax base, etc. However, as previously discussed in this opinion, such alleged injuries do not state a cause of action in light of the all-encompassing nature of the Illinois Environmental Protection Act.

erty in public trust and that engaging in preliminary construction activities will violate SWANCC's fiduciary duty to the public. In support, the original plaintiffs note that SWANCC is a public agency which acquired the balefill site with public funds and thus holds this site in a fiduciary capacity for the public benefit. From this premise the original plaintiffs conclude that SWANCC cannot fell trees or engage in other preliminary construction activity which would damage the environment in the course of pursuing an unlawful goal, *i.e.*, the commencement of preliminary, balefill-related activities without first obtaining a section 404 permit.

Initially, we note once again our conclusion that preliminary construction in anticipation of procuring the necessary section 404 permit is not, *per se*, unlawful activity. Section 404, which safeguards standing water by requiring that such water cannot be filled without a section 404 permit, does not speak to or in any way implicate tree cutting, well drilling or any other activity that does not interfere with the standing water.

Apart from section 404, the original plaintiffs do not point to any other statutes making the felling of trees or the drilling of wells unlawful. Rather, they assert that in conditioning its development permit on SWANCC's procurement of the section 404 permit, the Agency intended to preclude any preliminary construction activity until the section 404 permit is obtained. This argument, however, fails in that section 404 speaks only to the filling of waterways protected by the Clean Water Act and not the preliminary construction activities at issue. Moreover, we note that the felling of trees and drilling of wells, regardless of the underlying purpose, are not activities that require a permit from the Agency or any other local, State or Federal governmental unit.

While we agree that holding property in public trust

is inconsistent with engaging in a legally prohibited purpose with respect to that property, we conclude that there is nothing unlawful in felling trees and drilling wells. Indeed, it is illogical to suggest that SWANCC, which purchased the balefill property from a private owner for the express purpose of constructing the instant balefill, can then be charged with violating its fiduciary duty to the public where it fells trees and drills wells in furtherance of this goal. Thus, we conclude that count V of plaintiff's complaint is also insufficient, as a matter of law, to support enjoining such activity.

### D. Original Plaintiffs' Allegations Regarding Illinois Constitution Article XI

Finally, we turn to the vague and unstructured allegations in the complaint which suggest that article XI of the Illinois Constitution of 1970 might somehow be violated were SWANCC to engage in the threatened preliminary construction activities. (Ill. Const. 1970, art. XI.) Section 1 of article XI of the Illinois Constitution provides that "the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations." (Ill. Const. 1970, art. XI, § 1.) Article XI, section 2, gives private citizens the right to "enforce this right against any party, governmental or private." Ill. Const. 1970, art. XI, § 2.

While it is not clear which, if any, of the original plaintiffs would have standing to assert a violation of article XI of the Illinois Constitution, this question need not be decided. Section 2 of article XI does not create any new causes of action but, rather, does away with the "special injury" requirement typically employed in environmental nuisance cases. (ILCS Ann., 1970 Const., art. XI, §§ 1, 2, Constitutional Commentary, at 812-13 (Smith-Hurd 1993).) Thus, while a plaintiff need not allege a special injury to bring an environmental claim, there must nevertheless still exist a cognizable cause of

action. In the instant case, the injuries alleged amount to fear that the environmental attributes of the balefill site will be despoiled and, in the process, that nearby wildlife habitats will be damaged. Such allegations of damage, however, even if true, are not actionable absent a cognizable cause of action. As already noted, none of the theories alleged in the five counts of the original plaintiffs' amended complaint state a viable cause of action. Thus, insofar as plaintiffs have asserted no actionable environmental injury for purposes of section 2 of article XI of the Illinois Constitution, the instant injunction is improper.

## CONCLUSION

With respect to the Cook County suit, we affirm that part of the appellate court judgment that affirmed the circuit court's dismissal with prejudice of counts I, II, IV and V of the complaint, as well as the denial of leave to file the amended complaint, but reverse that part of the appellate court's judgment that reinstated count III, which we hold was properly dismissed with prejudice by the trial court. With respect to the Kane County suit, we reverse the appellate court's decision to uphold the injunction based upon count I of the intervening plaintiff's complaint and hold further that, as a matter of law, none of the other counts of the Kane County complaints are sufficient to uphold the injunction. The judgment of the appellate court is thus affirmed in part and reversed in part. The judgment of the circuit court of Cook County is affirmed, and the judgment of the circuit court of Kane County is reversed.

*Appellate court affirmed in part*
*and reversed in part;*
*Cook County circuit court affirmed;*
*Kane County circuit court reversed.*

JUSTICE NICKELS, dissenting:

The majority insulates a Cook County zoning decision from judicial challenge, even though it is well-settled law that such decisions are historically and statutorily subject to challenge. The majority holds, contrary to precedent, that plaintiffs lack standing because they are municipalities. The majority further holds that the challenge to the Cook County zoning decision is an impermissible collateral attack on a decision of the Illinois Environmental Protection Agency (Agency). The majority fails to recognize the different purposes and concerns implicated by these two separate proceedings. I therefore dissent.

The Illinois Environmental Protection Act (Act), by its very terms, does not control or directly affect the Cook County zoning process. Section 39(c) provides:

"[N]o permit for the development or construction of a new regional pollution control facility may be granted by the Agency unless the applicant submits proof to the Agency that the location of said facility has been approved by the County Board *** in accordance with Section 39.2 of this Act." (415 ILCS 5/39(c) (West 1992).)

Section 39.2 contains certain factors, environmental and nonenvironmental, that a county board must consider before giving "local siting approval" and indicates the manner of review. As noted by the majority, section 39.2 does not apply to Cook County in this instance. (See 415 ILCS 5/39.2(h) (West 1992).) Cook County is not subject to the procedural requirements for "local siting approval" or the review provisions contained in the Act.

Section 39(c) also provides:

"Except for those facilities owned or operated by sanitary districts organized under the Metropolitan Water Reclamation District Act, and *except for new regional pollution control facilities governed by Section 39.2*, and except for fossil fuel mining facilities, *the granting of a permit under this Act shall not relieve the applicant from meeting and securing all necessary zoning approvals* from the unit of government having zoning jurisdiction over

the proposed facility." (Emphasis added.) (415 ILCS 5/39(c) (West 1992).)

By its terms, the Act does not constrain the actions of the Cook County board. In fact, it does not apply at all. The Act indicates only that the ordinary rules regarding zoning approval and review of zoning decisions apply in this situation. In the absence of statute or other express legislative intent, common law principles control.

In the ordinary zoning case, a property owner seeks to have his property rezoned by the proper governmental body but is denied. Once denied, the individual may bring a declaratory judgment action in the circuit court to challenge the zoning ordinance. The individual challenging the zoning ordinance bears the burden of proving by clear and convincing evidence that application of the ordinance to his property is unreasonable and arbitrary and bears no substantial relation to public health, safety, morals, or welfare. See, *e.g.*, *National Boulevard Bank v. Village of Schaumburg* (1980), 83 Ill. 2d 228, 233-34; *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-80; *La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428.

In the Cook County declaratory judgment action, plaintiffs challenge the zoning ordinance adopted by Cook County which granted a special use permit for the construction of the balefill. The common law zoning principles discussed above have been applied to zoning decisions involving landfills and the Act. (See *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302.) Although ignored by the majority, the appellate court, in a case involving this same proposed balefill, has previously stated that a declaratory judgment action would be the appropriate manner in which to challenge this Cook County zoning decision. *Stark v. Pollution Control Board* (1988), 177 Ill. App. 3d 293, 300.

The majority holds that plaintiffs do not have stand-

ing to pursue this action because plaintiffs are municipalities. The majority acknowledges that municipalities ordinarily have standing to challenge the zoning decisions of other municipalities. In *Village of Barrington Hills v. Village of Hoffman Estates* (1980), 81 Ill. 2d 392, Barrington Hills sought to challenge a Hoffman Estates ordinance. The ordinance allowed construction of the Poplar Creek Music Theater in Hoffman Estates. This court held that Barrington Hills had standing to pursue its action contesting the proposed zoning. See also *City of Hickory Hills v. Village of Bridgeview* (1977), 67 Ill. 2d 399.

In the instant case, however, the majority holds that the municipalities do not have standing to challenge the Cook County zoning decision. The majority states that allowing municipalities to proceed will substantially increase litigation. In *Barrington Hills*, 81 Ill. 2d at 397-98, this court addressed a similar concern and rejected it:

> "Defendants argue that according plaintiffs standing to sue will invite chaos in the relationships between municipalities and flood the courts with zoning litigation. Our holding, however, is not so broad, since it conditions a municipality's standing to challenge the zoning decisions of other governmental units upon a clear demonstration that it would be substantially, directly and adversely affected in its corporate capacity."

The foregoing standing requirement is certainly sufficient to limit the number of extraterritorial challenges that are raised. As stated by the appellate court, the allegations of harm made by plaintiffs in this case are nearly identical to those made in *Barrington Hills*. Under the reasoning of *Barrington Hills*, plaintiffs have satisfied the standing requirement.

The majority also states that plaintiffs' challenge to the Cook County zoning decision constitutes an impermissible collateral attack on the Agency's decision to is-

sue a permit. The majority fails to acknowledge the different objectives underlying the Agency's permit authority and the county's zoning responsibility. Although these two proceedings involve some overlapping concerns, they are very different activities and require separate and distinct inquiries.

In granting a development permit, the Agency does not have the authority to select the actual site for the balefill. In fact, the Agency considers only whether the proposed balefill would violate any part of the Act or any environmental regulations. (415 ILCS 5/39(a) (West 1992).) In contrast, when a county board enacts a zoning ordinance in connection with a balefill, the examination is by necessity far broader. Accordingly, when a zoning ordinance is challenged, a reviewing court considers numerous other zoning factors, not just environmental concerns. These factors include: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are adversely affected by the zoning ordinance; (3) the extent to which the ordinance promotes public health, safety, morals, or general welfare; (4) the relative gain to the public compared to the hardship imposed on individual property owners; (5) the suitability of the zoned property for the zoned purposes; (6) the length of time which the property has been vacant as zoned considered in the context of land development in the vicinity; (7) whether a comprehensive zoning plan for land use and development exists; (8) if so, whether the zoning ordinance is consistent with it; and (9) the evidence of community need for the proposed use. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47; *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 378; see also *Cosmopolitan*, 103 Ill. 2d at 311.

Significantly, this court has previously noted the distinction between the Agency's permit authority and

the Cook County zoning authority. In *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, as in this case, the plaintiff brought a declaratory judgment action challenging a Cook County zoning ordinance that affected a landfill. The plaintiff planned to develop a sanitary landfill in Cook County and received a permit from the Agency. The plaintiff then asked for a special use permit from the Cook County board but this permit was denied. In upholding the county's decision to deny a special use permit to the plaintiff, this court stated:

"The decision whether a special-use permit should issue is a question which involves a delicate balancing of public and private interests. [Citation.] When the [Agency] considered this case, it could properly ask whether Sexton was a good operator, whether sanitary landfills in general were acceptable means of filling the public's need for garbage disposal, and whether Sexton had taken appropriate steps to minimize environmental dangers. Now the focus has shifted. From a zoning standpoint, the question is no longer whether Sexton has minimized the hazards. Even if the circuit judge believes that Sexton has done the best job possible under the circumstances, Sexton, the party seeking the special use, must prove by clear and convincing evidence that the remaining hazards, viewed in terms of the six Cook County special-use standards, do not preclude issuance of a permit for a sanitary landfill at this particular location. In other words, given the known dangers associated with landfills at the current state of the art, is this use compatible with the surrounding uses of the land?" *Cosmopolitan*, 103 Ill. 2d at 322-23.

As this court has already recognized, a challenge to the Cook County zoning decision is not an impermissible collateral attack on the Agency's permit decision.

Once standing was shown, the appellate court correctly applied the zoning factors listed above to determine whether the well-pleaded allegations in count III of the Cook County complaint stated a cause of action. Count III alleges that the proposed balefill site is located within the boundaries of Hanover Township and is

adjacent to Elgin and Bartlett. Count III further alleges that development of the balefill will lower the groundwater in the area, requiring South Elgin and Hanover Township to drill deeper wells. According to count III, the proposed landfill will also create safety hazards on nearby roads, requiring Elgin and Bartlett to spend additional funds for road repair, maintenance, and law enforcement. In addition, count III alleges that the balefill will adversely affect property values in Elgin, Wayne, Bartlett, South Elgin, and Hanover Township and will violate the comprehensive land use plans of Elgin, Bartlett, and Wayne. The proposed amended complaint further alleges that the proposed site will be very close to an Elgin industrial park, an Elgin residential neighborhood, and a Bartlett area that has been approved for the development of residential homes. Under the Act, these allegations of injury would not be considered by the Agency when it issued its permit.

I recognize that count III also contains allegations that, if true, might constitute violations of the Act or environmental regulations. Here, the county board conditioned the special use permit on the environmental expertise of the Agency. Certainly, it is reasonable for the board to rely on the Agency's environmental determination because the Agency has expertise in that area. Many of the allegations in the complaint, however, if true, do not constitute violations of the Act or environmental regulations. Plaintiffs may be able to prove that the Cook County ordinance (and choice of location for the balefill) is unreasonable and arbitrary, without establishing violations of the Act or environmental regulations.

By giving local government the authority to approve or disapprove proposed balefill sites, the legislature has reasonably indicated that local government and the Agency share some responsibility in this area. (See

*County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 516.) The Agency's authority to grant a permit and Cook County's zoning authority, however, are "distinct but concurrent powers." (*Sexton*, 75 Ill. 2d at 516; see also *Village of Carpentersville v. Pollution Control Board* (1990), 135 Ill. 2d 463.) Whether a balefill can be constructed and developed at a specific location without violating the Act does not mean that a balefill is consistent with the public health, safety, morals, or welfare of that area. The Act was intended to give local areas input into the development of a balefill. This local input must include the ability of affected communities to challenge the development of the balefill.

The majority appears concerned that neighboring municipalities will vigorously seek to challenge a proposed balefill. The majority, however, fails to recognize that a balefill may significantly impact these neighboring communities. Although plaintiffs are "extraterritorial" municipalities, they are located in close proximity to the proposed balefill and have alleged significant injury. In fact, the proposed balefill site is apparently located within the boundaries of "extraterritorial" plaintiff Hanover Township. At this stage, this court need only decide whether the allegations state a cause of action. Plaintiffs have alleged substantial, direct, and adverse injury, and their allegations in count III clearly state a cause of action. Plaintiffs should absolutely have a right to their day in court. They have properly laid the foundation from which they should be permitted to attempt to prove their case.

JUSTICE McMORROW joins in this dissent.