(No. 62345.—

CARLA STEWART, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Ryder Truck Lines, Inc., *et al.*, Appellants.)

*Opinion filed January 30, 1987.*

338

WARD and GOLDENHERSH, JJ., dissenting.

John B. Jenkins and Deena H. Froehle, of Gunn & Hickman, P.C., of Danville, for appellant Ryder Truck Lines, Inc.

Charles J. Devens, of Manion, Janov, Edgar, Devens & Fahey, Ltd., of Danville, for appellant Nancy Roberts.

Dukes, O'Rourke, Stewart, Martin & Helm, Ltd., of Danville (John F. Martin, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:
Plaintiff's husband died as a result of work-related in-

juries while employed by defendant, Ryder Truck Lines, Inc. An Industrial Commission arbitrator decided that the decedent's death benefits should be distributed among the plaintiff (Carla Stewart) and the decedent's four children from a previous marriage who lived with their natural mother (Nancy Roberts). Plaintiff petitioned the Commission for review of the arbitrator's decision, and then remarried while the matter was still before the Commission on review and while the decedent's children were still receiving benefits. The Commission ruled that under this court's interpretation of section 7(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.7(a)) in *Interlake, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 181, plaintiff's remarriage did not affect her right to continuing benefits.

On appeal, the circuit court of Vermilion County ruled that section 7(a) should be construed to entitle plaintiff to receive only a lump sum equal to two years' compensation. The Industrial Commission Division of the appellate court reversed the circuit court, concluding that the plain and unambiguous words of the statute entitled plaintiff to continuing benefits since her remarriage occurred while the decedent's children were still receiving benefits. (135 Ill. App. 3d 661.) A majority of the judges of the appellate court having joined a statement that this case involves a substantial question that warrants consideration by this court, we allowed defendant's petition for leave to appeal pursuant to Supreme Court Rule 315(a) (103 Ill. 2d R. 315(a)).

Section 7(a) of the Workers' Compensation Act provides in pertinent part:

"In the event of the remarriage of a widow or widower, where the decedent did not leave surviving any child or children who, at the time of such remarriage, are entitled to compensation benefits under this Act, the surviving spouse shall be paid a lump sum equal to 2 years

compensation benefits and all further rights of such widow or widower shall be extinguished." Ill. Rev. Stat. 1985, ch. 48, par. 138.7(a).

Plaintiff contends that the decision in *Interlake, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 181, holding that the statute provides for lifetime benefits to a widow if she remarries while any child of the decedent is entitled to benefits, is dispositive in this case. However, the widow in *Interlake* was the natural mother of the decedent's children and was responsible for their care and support, whereas the widow in the present case is the decedent's second wife and is not responsible for the decedent's children. *Interlake* therefore does not govern this case.

If we were to apply the holding in *Interlake* to this case, moreover, it would yield an absurd result. Such an application would appear to require that a first wife whose husband dies childless lose her widow's benefits if she remarries. A second wife, however, whose deceased husband is survived by children of a former marriage to whom the widow has no responsibility, would receive lifetime benefits if she remarries while any of the decedent's children is eligible for benefits, but lose her benefits if she remarries after the decedent's youngest child reaches 18. So anomalous a result demonstrates that at least a latent ambiguity exists in the statute.

The very fact that the remarriage provision of the statute is stated in the negative in itself creates an ambiguity. The provision does not state what is to occur in the event that a surviving spouse remarries if the decedent *left* children who are eligible for benefits at the time of such remarriage; it only states what is to occur if the decedent did *not* leave children who are eligible for benefits at the time of the surviving spouse's remarriage. In applying the negative language of the statute in *Interlake* the court decided that the lump-sum settle-

ment provisions did not apply to a widow who remarried while her children, who were also the decedent's, were eligible for benefits. In this case it remains for us to decide, since the statute does not expressly state, what is to occur in the context of the facts presented here.

The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the legislature's intent. (*People v. Boykin* (1983), 94 Ill. 2d 138, 141.) In determining what that intent is, the court may properly consider not only the language used in a statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 341; *Fitzsimmons v. Norgle* (1984), 104 Ill. 2d 369, 373.) In construing a statute, the court must assume that the legislature did not intend an absurd result. *People v. Steppan* (1985), 105 Ill. 2d 310, 316.

The legislature apparently neglected to consider the consequences of the remarriage provision of section 7(a) in the context of facts such as those presented by this case. A reading of section 7(a) as a whole indicates that the primary evil the legislature intended to remedy was the hardship to families whose principal wage earner dies leaving a financially dependent spouse, especially when the surviving spouse is left with minor children to raise as a single parent. The statute presumes the surviving spouse's dependency upon the decedent, but where there are no dependent children, the surviving spouse's right to receive benefits terminates upon remarriage. The lump-sum provision of section 7(a) is clearly intended to lessen the disincentive to remarriage that would result from a flat cutoff of benefits. See 2A A. Larson, Workmen's Compensation sec. 64.42 (1983).

The statute does not cut off benefits to the surviving spouse upon remarriage where there are minor, depen-

dent children, however, undoubtedly because the children's care and support continues to be the surviving parent's, and not the step-parent's, responsibility. Only if the decedent's children have reached majority prior to a remarriage does the presumption of the surviving parent's dependency upon the decedent end in the event of remarriage. While it is true that section 7(a) does not specifically provide an exception to its scheme of benefits for surviving spouses who, like plaintiff in this case, are not responsible for the care and support of the decedent's dependent children, the intent of the legislature to distinguish between surviving spouses who have dependent children to raise and those who do not is clear. Certainly the legislature did not intend a windfall to surviving second spouses who remarry but who have no responsibility to the decedent's children that is not available to first spouses where there are no children or to second spouses who do not remarry until after the decedent's children, to whom they have no financial responsibility, reach majority.

We therefore construe the remarriage provision of section 7(a) to require a lump-sum settlement for a widow who, having no responsibility for the care or support of the decedent's minor children, remarries. Consequently, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed. The cause is remanded to the Industrial Commission with directions to enter a lump-sum award equal to two years' compensation.

*Appellate court reversed; circuit court affirmed; cause remanded, with directions.*

JUSTICE WARD, dissenting:

I join in Justice Goldenhersh's dissent.

I would add that the majority avoids the embarrassment of disclosing that this court no fewer than four

times has unsuccessfully sought to convince the legislature of the unwisdom of the provision that we are again considering. Under our constitution's direction (Ill. Const. 1970, art. VI, sec. 17) that the supreme court make legislative recommendations to the General Assembly, this court in 1983, 1984, 1985, and 1986 urged that "Section 7(a) of the Workers' Compensation Act should be reconsidered." Each year the court set out in detail the provisions of the statute and described the court's holding in *Interlake, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 181. In our last recommendation we referred specifically to the case now before us and to the appellate court's holding that under section 7(a) the plaintiff was entitled to continuing benefits. This of course followed the interpretation of this court in *Interlake.* The General Assembly, however, was not swayed by these persistent recommendations.

This court, in interpreting a statute has held:

> "Where the legislature chooses not to amend a statute after a judicial construction, it will be presumed that it has acquiesced in the court's statement of the legislative intent." *Miller v. Lockett* (1983), 98 Ill. 2d 478, 483.

Sutherland on Statutory Construction (1984 revision) cites the holdings that "legislative inaction following a contemporaneous and practical interpretation is evidence that the legislature intends to adopt such an interpretation." (2A Sutherland, Statutory Construction sec. 49.10, at 407 (4th ed. 1984).) Sutherland states further: "Where action upon a statute or practical and contemporaneous interpretation has been called to the legislature's attention, there is more reason to regard the failure of the legislature to change the interpretation as presumptive evidence of its correctness." (2A Sutherland, Statutory Construction sec. 49.10, at 408 (4th ed. 1984).) Here the interpretation in *Interlake* has been formally called four times to the legislature's attention. The disregard by the

legislature is to me a long and clear signal that the holding in *Interlake* expresses the legislative intention. I fear that some will say, however incorrectly, that the majority's holding reflects a nearly obsessive effort to reach a result that the majority considers wiser than that intended by the legislature.

JUSTICE GOLDENHERSH, also dissenting:

I dissent. In a display of clairvoyant skills worthy of the Barnum and Bailey Circus in its heyday, the majority has ascertained the true intent of the legislature in the enactment of section 7(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.7(a)). By means of this heretofore unrevealed ability to discern legislative intent, the application of two newly created rules of statutory interpretation, and the failure to follow established rules of statutory construction, the majority has completely distorted the plain and unambiguous language of section 7(a).

The first new rule promulgated by the majority for the interpretation of statutes is that the possibility that, under certain circumstances, the application of a clearly stated unambiguous statute may effect a result deemed by the majority to be "anomalous" "demonstrates that at least a latent ambiguity exists in the statute." 115 Ill. 2d at 340.

The second rule is that the statement of a provision in the negative renders the statute ambiguous. The rationale, as stated by the majority, is:

"The very fact that the remarriage provision of the statute is stated in the negative in itself creates an ambiguity. The provision does not state what is to occur in the event that a surviving spouse remarries if the decedent *left* children who are eligible for benefits at the time of such remarriage; it only states what is to occur if the decedent did *not* leave children who are eligible for benefits

at the time of the surviving spouse's remarriage." (Emphasis in original.) 115 Ill. 2d at 340.

This court has repeatedly stated the general rule applicable here. In *Franzese v. Trinko* (1977), 66 Ill. 2d 136, the court said:

"The language of a statute must be given its plain and ordinary meaning. 'It is a primary rule in the interpretation and construction of statutes that the intention of the legislature should be ascertained and given effect. [Citations.] This is to be done primarily from a consideration of the legislative language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained therefrom it must prevail and will be given effect without resorting to other aids for construction. [Citations.] There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports.' *Western National Bank of Cicero v. Village of Kildeer* [1960], 19 Ill. 2d 342, 350." 66 Ill. 2d 136, 139-40.

The majority pays lip service to this concept but, citing *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, *Fitzsimmons v. Norgle* (1984), 104 Ill. 2d 369, and *People v. Boykin* (1983), 94 Ill. 2d 138, in support of its newly cited rules, proceeds to "ascertain and give effect to the legislature's intent." (115 Ill. 2d at 341.) The cases cited by the majority are not in point. *People v. Boykin* (1983), 94 Ill. 2d 138, involved a statute which this court stated was " 'reasonably susceptible' to both interpretations urged." (94 Ill. 2d 138, 141.) *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, involved a statute which could be interpreted in two ways and required construction in order to determine whether an appointment to fill a vacancy was properly made. The court there stated that the judicial role is to ascertain the intent of the legislature and to give it effect, and in so doing it will examine the entire statute, assuming that it

first finds an ambiguity which requires construction. *Fitzsimmons v. Norgle* (1984), 104 Ill. 2d 369, makes it clear that, absent an ambiguity, there is no need for construction.

The statute here involved provides:

> "In the event of the remarriage of a widow or widower, where the decedent did not leave surviving any child or children who, at the time of such remarriage, are entitled to compensation benefits under this Act, the surviving spouse shall be paid a lump sum equal to 2 years compensation benefits and all further rights of such widow or widower shall be extinguished." (Ill. Rev. Stat. 1985, ch. 48, par. 138.7(a).)

There is no ambiguity nor is there any indication that the General Assembly intended that there be any difference in the situation of a widow who was the mother of the surviving children and a widow who was not.

Section 7(a) provides for an award of benefits and provides for an exception to the right to receive benefits in a single specific situation. The majority disregards the long-established rule that "an expression of certain exceptions in a statute is construed as an exclusion of all others." (*People ex rel. Difanis v. Barr* (1980), 83 Ill. 2d 191, 199.) Had the General Assembly intended the result conjured up by the majority, it would have been a simple matter to include the exception in the statute.

Section 7(a) was considered in *Interlake, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 181. The court said:

> "It is obvious that Interlake's argument is contrary to the plain language of the statute. The statute provides for the payment of death benefits until the widow dies, or until the children reach 18, whichever is *later*. If, however, the widow remarries when *none* of the decedent's children are entitled to compensation, she is to receive a lump sum of two years' compensation and then her rights are extinguished. Under the language of the section, Frieda, as the decedent's widow, is entitled to benefits

until she dies, because she did not remarry at a time when none of the decedent's children were entitled to support. There simply is no provision in the statute for terminating a widow's benefits upon remarriage when there remain minor children entitled to support." (Emphasis in original.) 95 Ill. 2d 181, 191.

The conclusion reached by the majority concerning the alleged failure to consider the consequences of the statute is extraordinary. Its comments concerning the presumption upon which the statute, as amended by the majority, is purportedly based, are pure conjecture. Ordinarily, comments of this nature in an opinion are supported by citations to legislative journals or transcripts of debates, not, as here, by pure speculation.

The effect of the majority opinion is to engraft on a plainly stated unambiguous statute an exception which, had it intended to do so, could have been easily stated by the General Assembly.

The appellate court correctly construed the statute and its judgment should be affirmed.