THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STUDIO 20, INC., *et al.*, Defendants-Appellants (Bel-Mar Business Park, L.L.C., *et al.*, Defendants).

Second District    No. 2—99—0596

Opinion filed July 20, 2000.

HUTCHINSON, J., dissenting.

Patrick M. Loftus and Mark E. Vietzen, both of Law Offices of Patrick M. Loftus, of Addison, for appellants.

Roger T. Russell, State's Attorney, of Belvidere (Martin P. Moltz and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendants, Studio 20 Inc., T. Michael Walker, a/k/a Terry Walker, Spyros Spyratos, and Jim Valkimadis, a/k/a Dimitrios Valkimadis (collectively, Studio 20 or the Studio 20 defendants), appeal from a preliminary injunction that prohibited them from opening an adult entertainment facility (facility). The circuit court ruled that the location of the facility would violate section 5—1097.5 of the Counties Code (55 ILCS 5/5—1097.5 (West 1998)) by being within 1,000 feet of the property boundary of a place of religious worship. Studio 20 contends that the circuit court erred when it included land not owned or leased by Studio 20 in determining the boundary of the facility. We disagree and affirm the preliminary injunction.

On May 11, 1999, the State filed a three-count complaint against the Studio 20 defendants, Bel-Mar Business Park, L.L.C., Mark A. Beaulieu, and Geraldine P. Parth, a/k/a Geraldine Beaulieu. The complaint identified defendants Mark A. Beaulieu, Geraldine P. Parth, a/k/a Geraldine P. Beaulieu, and Bel-Mar Business Park, L.L.C. (collectively, the owners) as either the owners or landlords of a 5.03-acre parcel of land located at 6677 Logan Avenue in unincorporated Boone County (the facility parcel).

The three counts of the complaint were virtually identical in substance. The complaint alleged that Studio 20 intended to open an adult entertainment facility in a building on the facility parcel and that this would violate section 5—1097.5 because the boundary of the facility parcel was within 1,000 feet of the boundary of another parcel of property that contained a place of religious worship (the church parcel). The three counts of the complaint sought, respectively, a permanent injunction, a preliminary injunction, and a temporary restraining order against defendants prohibiting them from operating the adult entertainment facility on the facility parcel. On the same date that the complaint was filed, the trial court entered an *ex parte* temporary restraining order that prohibited defendants from opening an adult entertainment facility on the facility parcel.

On May 20, 1999, the Studio 20 defendants filed a motion to dissolve the temporary restraining order and the trial court conducted a hearing on that motion and on the State's request for a preliminary

injunction. At the hearing, the State advised the court that it had not been able to serve the owners. The attorney for the Studio 20 defendants responded that the Studio 20 defendants were the real parties in interest because they were the lessees. The trial court stated that it would be appropriate to proceed because the thrust of the preliminary injunction was directed against the Studio 20 defendants.

The record reveals the following. When the State filed its complaint there was an active place of religious worship on the church parcel. The facility parcel was east of the church parcel. A parcel or parcels of land, whose ownership is not established in the record, separated the church parcel and the facility parcel. The shortest distance between the boundary line of the church parcel and the boundary line of the facility parcel was the distance between the southeast corner of the church parcel and the southwest corner of the facility parcel. The distance between those points was 955.13 feet. There was only one building on the facility parcel. The building was located near the center of the parcel. Studio 20 intended to open and operate an adult entertainment facility in the building on the facility parcel.

Steve Schabacker, the building and zoning enforcement officer for Belvidere and Boone County, made at least two visits to the facility parcel. Schabacker testified that, in addition to the building on the facility parcel, the proposed adult entertainment facility would be using an outdoor sign, a driveway, a parking lot, a water well, a septic system, and a leach field, all of which were located on the facility parcel. Schabacker testified that in 1977 the entire 5.03 acres of the facility parcel were rezoned from agricultural to general business use. While Schabacker was visiting the facility parcel, one of the Studio 20 defendants gave Schabacker a copy of a lease agreement between the owners and the Studio 20 defendants. Schabacker testified that the lease used the word "premises" to describe the land that comprised the facility parcel.

On cross-examination, Schabacker initially opined that the lease indicated that Studio 20 was leasing the entire facility parcel. However, Schabacker was then asked to read a definition of the leased premises in the lease. Schabacker stated that the lease defined "premises" as the land under the building on the parcel.

On redirect examination, Schabacker testified that there was no indoor parking in the building on the facility parcel. Schabacker also testified that the parking lot, the sign, the septic tank, and the leach field were all on land that was not under the building.

On re-cross-examination, Schabacker testified that the outdoor sign was in the front of the property, that the driveway started in the

front of the property and went to the rear of the building, and that neither the rear of the building nor the septic field extended to the southern property line of the facility parcel. Schabacker conceded that the State had not made any measurements of the distance between the septic field, the building, or the sign and the boundary line of the church parcel.

The State admitted a number of exhibits without objection. Included in these exhibits was a copy of a letter from the land manager of the five-acre parcel granting Studio 20 permission to perform "any and all modifications to the building and land to assist in [its] business."

Terry Walker, one of the Studio 20 defendants, testified that he was one of the lessees in the lease between Studio 20 and the owners of the facility parcel. Walker acknowledged that Studio 20 intended to operate an adult entertainment facility, as defined in section 5—1097.5, on the leased premises. Walker testified that the leased premises did not include the entire 5.03 acres of the facility parcel. Walker described the leased premises as including "the east section of that parcel that includes the building, the sign, the entranceway, and the parking lot which is directly behind the rear entrance of the building" and the septic field that was directly in front of the building. Walker measured the distance from the boundary line of the leased premises to the southwest property line of the facility parcel and determined that the distance was 175 feet.

Walker acknowledged that the lease had recently been amended. Walker explained that the lease was amended to make sure that the owners were not responsible for anything sold on the leased premises and to "delineate the exact description or exact boundaries of the property that we lease." Walker testified that Studio 20 had no interest in the part of the facility parcel that was not included in the leased premises (nonleased premises). Walker also testified that there was a sign on the nonleased premises stating that the nonleased premises were for sale and that the owners would build to suit.

On cross-examination, Walker acknowledged that the lease was amended after the State filed its complaint in this case. Walker testified that the reasons for amending the lease were (1) to correct the name of the lessees to Studio 20 from another name that was already in use; (2) to ensure that the owners were not responsible for anything that Studio 20 sold; and (3) to clarify exactly what portion of the facility parcel Studio 20 was leasing. Walker claimed that the part of the facility parcel that Studio 20 was leasing has been the same since the lease was first signed and that the amendment was intended only to clarify the extent of the leased premises.

Following the hearing, the trial court entered a preliminary injunction order that prohibited Studio 20 from opening an adult entertainment facility on the facility parcel. The order also stated that the motion to dissolve the temporary restraining order was moot. In the order, the trial court made findings that included:

"1. In the statute in question, the term facility includes any premises that support the facility.

2. There is only one parcel of land at the location at 6677 Logan Avenue, Belvidere, Illinois, and it is a five acre site.

3. There has been no subdivision of this five acre site that has been platted for at 6677 Logan Avenue, Belvidere, Illinois.

4. If the premises support the enterprise, then there's a violation of the statute, 55 ILCS 5/5-1097.5, regardless of whether the owner of the business has an interest in the whole of the premises.

5. The issue of whether or not the leasehold is contemporaneous with the legal description of the premises is not of consequence if the whole premises supports the adult enterprise.

6. The State has shown a reasonable likelihood of success on that issue that the entire premises support the adult entertainment business."

The Studio 20 defendants timely appeal. On appeal, Studio 20 contends that the preliminary injunction order must be reversed because the trial court erred when it found that the nonleased premises supported the adult entertainment facility that Studio 20 intended to open. Studio 20 asserts that the State failed to offer any evidence showing that the nonleased premises in any way supported the leased portion of the facility parcel. Studio 20 maintains that in the absence of such a showing the court should have used the distance between the leased portion of the facility parcel and the boundary line of the church parcel to determine whether the adult entertainment facility violated the statute. Studio 20 argues that if the court had used that distance it would have found that the adult entertainment facility was not within 1,000 feet of the boundary line of the church parcel.

The State responds that the Studio 20 defendants have failed to show that the trial court erred. The State argues that the totality of the evidence supports the trial court's determination that the measurement should have been from property line to property line.

■ We initially address our standard of review. Generally, the standard of review regarding the propriety of a preliminary injunction is whether the trial court abused its discretion in determining that the plaintiff provided *prima facie* evidence to support his or her claim. *Limestone Development Corp. v. Village of Lemont*, 284 Ill. App. 3d 848, 853 (1996). However, to the extent that the trial court's ruling was based on its construction of a statute, a reviewing court may

resolve the issue as a matter of law using a *de novo* standard of review. *Magee v. Huppin-Fleck*, 279 Ill. App. 3d 81, 85 (1996).

In this case, the trial court's ruling was based, in part, on its construction of section 5—1097.5. We will therefore review that part of the court's ruling *de novo*. We will review the balance of the trial court's ruling under the abuse of discretion standard.

■ We begin our analysis with the language in section 5—1097.5. Section 5—1097.5 provides:

> "Adult entertainment facility. It is prohibited within a county to locate an adult entertainment facility within 1,000 feet of the property boundaries of any school, day care center, cemetery, public park, forest preserve, public housing, and place of religious worship.

> For the purposes of this Section, 'adult entertainment facility' means (i) a striptease club or pornographic movie theatre whose business is the commercial sale, dissemination, or distribution of sexually explicit material, shows, or other exhibitions or (ii) an adult bookstore or adult video store whose primary business is the commercial sale, dissemination, or distribution of sexually explicit material, shows, or other exhibitions." 55 ILCS 5/5—1097.5 (West 1998).

In this case, Studio 20 admits that the facility it wants to open and operate is an "adult entertainment facility" as defined in section 5—1097.5. Studio 20 does not dispute that section 5—1097.5 prohibits the location of such a facility within 1,000 feet of the property boundaries of the church parcel. The issue before us is whether the 1,000-foot prohibition in section 5—1097.5 should be measured from property line to property line, as the State asserts, or whether it should be measured from the property line of the church parcel to the boundary line of the Studio 20 leasehold, as Studio 20 asserts.

The trial court essentially agreed with the State that the measurement should be from property line to property line. The court did this when it construed the term "facility" in section 5—1097.5 to include any premises that support the facility. The court also at least implicitly construed section 5—1097.5 when it found that if the whole premises, *i.e.*, the whole parcel, supports the facility, and if the boundary line of the parcel is within 1,000 feet of the boundary line of a protected entity, then there is a violation of section 5—1097.5. The court also found that, if the whole parcel supports the facility, then it is irrelevant whether the leasehold of the facility does not include the whole parcel.

When construing a statute, the court must ascertain and give effect to the intent of the legislature. *Stewart v. Industrial Comm'n*, 115

Ill. 2d 337, 341 (1987). In determining the legislative intent, the court may consider not only the language used in the statute but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. *Stewart*, 115 Ill. 2d at 341.

The parties do not cite and our research has not revealed any case that has construed section 5—1097.5. The plain language of section 5—1097.5 shows that the legislature clearly intended to prohibit the location of an adult entertainment facility within 1,000 feet of the *property boundary* of certain protected entities, including a place of religious worship. The question before us is whether the legislature intended to measure the distance between the protected entity and the facility by measuring the distance between their property boundaries.

■ We conclude that the legislature intended for the 1,000 feet to be measured from property line to property line. The evil sought to be remedied here is the purveyance of adult entertainment close by places children or families frequent, such as schools, parks, and churches. In choosing to prohibit the building of "adult entertainment facilities" within 1,000 feet of churches, the legislature obviously was seeking to protect children and their families from exposure to pornography and its attendant ills. By measuring the distance from the property lines of both the protected entity and the adult entertainment facility, this protection can be maximized.

Additionally, this interpretation is certain and unambiguous. The alternate interpretation, measuring the distance from the boundary of the facility to the property line of the protected entity, raises more questions than it answers. For example, where is the facility boundary? How is it determined? Is it the wall of the building, or the parking lot, or the sign in front, or is it the area within the store from which adult products are actually sold? The only sure way to determine the boundary is through litigation, with its attendant uncertainty and expense. Our interpretation, on the other hand, promotes both stability and certainty by its very definiteness, as well as gives full force to the legislature's chosen remedy to the ills of exposing children to the world of adult entertainments. Thus, we find that the trial court properly interpreted section 5—1097.5.

■ We next turn to the remaining factual issues. The trial court found that "[t]he State has shown a reasonable likelihood of success on [the] issue that the entire premises support the adult entertainment business." We agree. The State presented evidence that the entire five-acre parcel had not been subdivided. The State further demonstrated that the property had no other buildings or structures on it save for Studio 20's. Studio 20's amended lease suggested that

only the land under the building was the "premises," yet the parking lot, driveway, sign, and septic field all served the premises. Additionally, the owners of the parcel authorized Studio 20 to make any and all modifications to the building and the land to assist it in its business. The trial court's determination, therefore, that the leased premises were supported by the remainder of the parcel is supported by the record. Accordingly, we find no abuse of discretion in the trial court's decision to grant the preliminary injunction.

Studio 20 cites to *City of Elgin v. County of Cook*, 169 Ill. 2d 53 (1995), for the proposition that the contiguous land to the leasehold was unrelated and cannot be considered to be under the lessor's control. *City of Elgin* is irrelevant to this case, however, as the record shows that the five-acre parcel has not been subdivided and the owners gave Studio 20 permission to make any improvements to the land or building as would assist it in its business. Thus, there is evidence supporting the State's contention that the entire parcel supports Studio 20's business.

Accordingly, we affirm the order of the trial court granting the State's request for a preliminary injunction.

Affirmed.

THOMAS, J., concurs.

JUSTICE HUTCHINSON, dissenting:

I must respectfully disagree with the majority that the legislature intended for the 1,000 feet between an adult entertainment facility and any of the listed protected entities to be measured from property line to property line.

Our supreme court recently reiterated the well-established principles of statutory construction. The court stated:

> "The fundamental rule of statutory interpretation is to give effect to the intention of the legislature. A court first looks to the words of the statute. The language of the statute is the best indication of the legislative intent. When the statutory language is clear, it must be given effect without resort to other tools of interpretation. In interpreting a statute, it is never proper for a court to depart from plain language by reading into a statute exceptions, limitations, or conditions which conflict with the clearly expressed legislative intent." *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 556 (1999).

Accordingly, I do not believe that the plain language of section 5—1097.5 supports the majority's interpretation. The legislature used

the concept of "property boundaries" in referring to the protected entities. However, the legislature did not use the concept of property boundary when referring to the facility. Rather, the legislature merely referred to "an adult entertainment facility" and defined an adult entertainment facility by using the terms "club," "theatre," "bookstore," and "video store."

I believe that a reasonable inference from this language is that the legislature intended the measurement to be the distance between the property boundary of the protected entity and the boundary of the facility, whatever form that takes. I would therefore conclude that the language of section 5—1097.5 does not support the trial court's construction of section 5—1097.5 to the extent that the construction implied that the measurement should be from property line to property line.

While I concede that this analysis then requires an additional inquiry concerning what constitutes the boundary of an adult entertainment facility, this inquiry is easily answered. Black's Law Dictionary defines "facility" as "[s]omething that is built or installed to perform some particular function, but it also means something that promotes the ease of any action or course of conduct." Black's Law Dictionary 591 (6th ed. 1990). This definition suggests that a facility has some specific utilitarian or functional aspect. In view of these utilitarian or functional aspects, I believe that the determination of an adult entertainment facility's boundary should be made on a case-by-case basis. Something that has utility or serves some function for a facility in one case might not be utilitarian or functional for a facility in another case.

In this case, the building, the outdoor sign, the driveway, the parking lot, the septic system, and the water well are obviously utilitarian or functional with respect to the adult entertainment facility that Studio 20 wants to open on the facility parcel. With the exception of the water well, the record shows that all these things are within the boundary of the leased premises. Thus, it would be reasonable to consider the boundary of the leased premises to be the boundary of the adult entertainment facility. Furthermore, a review of the physical evidence, including a current survey, indicates that the majority of the facility parcel is not being used or is subject to an encroachment by a farming operation from a neighboring parcel. Therefore, I believe that for the property boundary of the entire parcel to reasonably be considered the property boundary of the facility, the State would have had to make at least a *prima facie* showing that the nonleased premises are utilitarian or functional with respect to the facility. The record is devoid of anything tending to make such a showing.

Furthermore, the trial court's and the State's reliance on cases involving statutes prohibiting the issuance of a liquor license for the sale of liquor within specified distances from protected entities is misplaced in my opinion. The State cites *Smith v. Ballas*, 335 Ill. App. 418 (1948), *De Loian v. Illinois Liquor Control Comm'n*, 109 Ill. App. 2d 71 (1969), *Kaminski v. Illinois Liquor Control Comm'n*, 20 Ill. App. 3d 416 (1974), and *Bilandic v. Johnson*, 62 Ill. App. 3d 455 (1978), as authority for the proposition that the measurement of the distance between the protected entity and the facility should be from lot line to lot line. Each of these cases is factually distinguishable from this case. None of these cases involved the sale of liquor on leased premises that were less than the entire premises where the nonleased premises served no utilitarian or functional purpose, as in this case. Therefore, I believe that the State failed to show that the nonleased premises in the facility parcel served some utilitarian or functional purpose with respect to the adult entertainment facility.

Finally, while I agree with the majority's conclusion that the evil sought to be remedied here is the purveyance of adult entertainment facilities close by places children or families frequent, it is not this court's function to change the language of the legislation to accomplish the legislation's purpose. The language here is clear and unambiguous, and it does not say that the distance between the protected entities and an adult entertainment facility is to be measured property line to property line.