No. 3-02-0744

_________________________________________________________________

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2003

 ) 

TOM CAMLIN, as Parent and Next) Appeal from the Circuit Court

Friend of Kevin Camlin, a ) for the 12th Judicial Circuit,

Minor, ) Will County, Illinois

)

Plaintiffs-Appellants, ) 

) No. 02-CH-567

) 

) 

 ) Honorable Herman S. Haase,

BEECHER COMMUNITY SCHOOL ) Judge, Presiding 

DISTRICT ET AL., )

)

Defendants-Appellees. )

_________________________________________________________________

PRESIDING JUSTICE McDADE delivered the opinion of the court:

_________________________________________________________________

This case arises from the one-year expulsion of a student in the Beecher Community School District. The student was expelled from school after being implicated in an incident involving drugs at a school function. The plaintiff asserted that his son’s due process rights were violated by the defendant school district and sought a preliminary injunction in the trial court, which was denied. The plaintiff sought review by way of interlocutory appeal and we reverse. 

FACTS

While a freshman at the Beecher Community High School during the 2001-02 school year, Kevin Camlin attended a school function at a bowling alley. During the event, a member of the school staff learned that someone had smoked marijuana in the boys' bathroom. 

The incident was reported to the administration, which began an investigation. After a series of interviews with students at the school, the administration determined that three boys had been in the bathroom when the marijuana was smoked: Kevin Camlin, Mike Barton, and Miguel Savalez.

The three were interviewed separately by the dean of students, Kevin Brown. Miguel admitted that he had marijuana in his possession that he obtained from Mike Barton. Barton admitted smoking the marijuana. Neither stated that Camlin had smoked as well, and in his interview Kevin denied doing so, although he admitted that he knew the other boys were smoking.

As punishment, Miguel and Mike received 10-day suspensions, with recommendation for expulsion. Although there was no evidence that Kevin was smoking, he received a six-day suspension because he admitted to being present in the bathroom.

Over winter break, Mike Barton struck a deal with the school administrators whereby he would avoid expulsion by implicating Camlin in the incident. On January 17, 2002, when the spring semester began, Kevin was called to the dean's office and was told that the dean had received "further information" about Kevin’s involvement. 

He was not informed of the nature the “further information” or by whom it had been supplied.  At that time, Kevin asked to see his mother, but the request was denied and he was told that he could see her following the interview. The dean demanded that Kevin sign a disciplinary form acknowledging his culpability. Kevin refused and again demanded to see his mother. The dean then notified Kevin that he was imposing a 10-day suspension and would recommend expulsion.

Following the January 17 confrontation, Kevin’s  parents were notified that an expulsion hearing was scheduled for January 31, 2002, and that Kevin was charged with violation of a broad drug rule.  They protested the expulsion and repeatedly urged the school to adhere to its published school policy concerning drug violations. 

In August 2001, a memo was sent from the high school principal to parents explaining the school district's drug/alcohol policy and requiring a parent’s signature to show it had been received.  The attached policy, which was part of the Parent-Student Handbook, stated: 

"[S]tudents who 'sell, distribute, use, have, or are under the influence of illegal drugs, look-a-like drugs, controlled substances, associated paraphernalia, or alcoholic beverages' are subject to disciplinary action, including in-school suspension, out-of-school suspension, or expulsion." 

Furthermore, the policy stated:

"[S]hould a student choose to violate this policy, Beecher High School highly encourages him/her to participate in an educational experience involving the student and his/her parents. Therefore, a first-time violator will be given the option of participating in the NEXT STEP PROGRAM sponsored by the Parkside Lodge South Resolve Center or he/she will be suspended from school as outlined in the student handbook if the NEXT STEP PROGRAM is not considered by the student and parent." 

Kevin’s parents requested that their son be allowed to enter the NEXT STEP treatment program as an alternative to punishment, but that request was denied by the school administration.

On January 31, 2002, an expulsion hearing was held, with Frank Nardi, a guidance counselor at the high school, acting as the hearing officer.  Mike Barton, his parents and his attorney; Dean Brown, acting as the prosecutor; and Kevin’s parents were in attendance. 

Under examination, Mike Barton testified that Kevin gave him the bag of marijuana on December 4, 2001. On December 6, he brought the marijuana to school and to the bowling trip, where Barton, Savalez and Camlin all smoked.  Additionally, Barton testified that he gave Kevin $20 in exchange for the drugs on that day. 

Following Barton's testimony, Kevin’s  parents asked when they would be allowed to present evidence. Nardi advised them that evidence needed to be presented at that time.  They offered none but, rather, argued that the school should adhere to the drug policy stated in the Parent-Student Handbook. 

Following the hearing, Nardi wrote a three-page report on the proceedings but did not make any findings of fact or determinations of the credibility of the witnesses. Both Nardi and other school administrators acknowledged that his only function was to record the proceedings and report what had been  said to the school board. On February 11, 2002, the school board held a meeting during which it decided, by unanimous vote, to expel Kevin.

Following the expulsion, Kevin’s parents filed, in the circuit court, a motion for injunctive relief seeking to enjoin the expulsion and compel plaintiff’s admission into the NEXT STEP PROGRAM.  A hearing was held on the motion on August 29 and 30, 2002. The trial court ruled that the petitioner had no likelihood of success on the merits, that there was no due process violation, and that the school did not violate its drug/alcohol policy. The plaintiff appeals this decision. 

ANALYSIS

Plaintiff appeals from the denial of his petition for a preliminary injunction. In order to obtain this equitable relief, the petitioner must prove that (1) there is a clearly ascertained right in need of protection, (2) irreparable harm will result unless the injunction is granted, (3) there is no adequate remedy at law, and (4) there is a likelihood of success on the merits. 
Hartlein v. Illinois Power Co.
, 151 Ill. 2d 142, 156, 601 N.E.2d 720, 726-27 
(1992). The trial court's decision should be reviewed for an abuse of discretion. 
People v. Studio 20, Inc.
, 314 Ill. App. 3d 1000, 1005, 733 N.E.2d 451, 454
 (2000).
 

On review, the plaintiff makes two assertions in support of his claim of a right in need of protection: (1) that his due process rights were violated at the expulsion hearing; and (2) that the school district violated his due process rights by refusing to follow its own stated policy concerning first-time drug offenders. The school district urges the court to find that its process was free of any constitutional infirmity requiring redress, and contends that Kevin’s punishment was consistent with its stated alcohol/drug policy.

THE EXPULSION HEARING

The plaintiff asserts that the expulsion hearing was not constitutionally adequate because, first, the hearing officer was not able to make findings of fact or judge the credibility of witnesses, thereby depriving the decision-maker of any direct or indirect basis to consider or determine the believability or persuasiveness of the evidence.  Second, the plaintiff claims that he was refused a meaningful opportunity to cross-examine the witness against him, thereby denying him the chance to confront his accuser and expose any bias or untruth.  

Due process guarantees are not the same for all types of proceedings. Rather, the procedural protections required by due process must be determined by reference to the rights and interests at stake in a particular case. 
Morrissey v. Brewer
, 408 U.S. 471, 481,
 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600 (1972). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." 
Cafeteria & Restaurant Workers & Union Local 473 v. McElroy
, 367 U.S. 886, 895, 6 L. Ed. 2d 1230, 1236, 81 S. Ct. 1743, 1748 (1961).  
However, at a minimum, the due process clause requires that deprivations of life, liberty, or property be preceded by notice of the charges and an opportunity to be heard. 
Goss v. Lopez
, 419 U.S. 565, 579, 42 L. Ed. 2d 725, 737, 95 S. Ct. 729, 738 (1975).

In 
Goss v. Lopez
, the United States Supreme Court ruled that students who were suspended for 10 days were entitled to notice of the pending suspension, and to "some kind of a hearing."  (Emphasis omitted.) 
Lopez
, 419 U.S. at 579, 42 L. Ed. 2d at 737, 95 S. Ct. at 738. The process required in that case was somewhat informal; in fact, it was no more than an informal hearing to allow the student to tell her side of the story. 
Lopez
, 419 U.S. at 584, 42 L. Ed. 2d at 740, 95 S. Ct. at 741. However, the Court noted that in cases involving longer suspensions or expulsions, more formal proceedings may be required. 
Lopez
, 419 U.S. at 584, 42 L. Ed. 2d at 740, 95 S. Ct. at 741. 

Here, the plaintiff was afforded a hearing on his expulsion and was provided notice of the hearing. He was, however, denied any information about the identity of his accuser or the nature of the specific charge or of the new evidence he would be called upon to refute and was thus denied adequate notice of the charges against him.  The plaintiff's argument that he was not given the opportunity to confront witnesses against him is not wholly accurate.  Kevin’s parents were in the hearing room and could have questioned Mike Barton, but this “opportunity” was not fair or meaningful because they had no prior knowledge about the what and who of the charge.  Moreover, the actual decision-maker had no first-hand basis for arriving at a conclusion.  There was no verbatim transcript, only a three-page report by a school employee who was not allowed to make factual findings or evaluate credibility.  Nor was the information ultimately presented to the school board limited to that disclosed at the hearing or in the report.  It appears that the superintendent advised board members of something else he had heard that weighed against plaintiff but that plaintiff had no notice of or opportunity to respond to or refute.  For these reasons, we do not share the trial court’s confidence that there is no likelihood plaintiff could prevail on this issue on the merits.  

THE DRUG/ALCOHOL ABUSE POLICY

The plaintiff also argues that the school board erred by not following its own rules when punishing his conduct. The school's policy states that "students who 'sell, distribute, use, have, or are under the influence of illegal drugs’" are in violation of the school's drug policy. However, the rules state that a first- time offender has the option of electing a treatment program, and if the option is not exercised, the student will be subject to suspension. The school argues that it is under no obligation to follow its rules when punishing students. We believe this assertion is clearly wrong.

The plaintiff has a protected property interest in his entitlement to a public education. 
Lopez
, 419 U.S. at 574, 
42 L. Ed. 2d at 734-35, 95 S. Ct. at 736
. Since this interest exists, school boards must proceed in accordance with the principles of due process. 
Lopez
, 419 U.S. at 574, 42 L. Ed. 2d at 734-35, 95 S. Ct. at 736. The property interest claimed by a recipient of a benefit is defined by existing rules or understandings that arise from independent sources such as state law, rules and understandings that secure certain benefits and support claims for entitlement to benefits. 
Board of Regents v. Roth
, 408 U.S. 564, 576-77, 33 L. Ed. 2d 548, 560, 92 S. Ct. 2701, 2708-09 (1972)
. Here, the school board has established rules that define a student's rights and obligations in the event the student violates the school's drug policy. The school is empowered to create such rules by state statute. 105 ILCS 5/10--20.5 (West 2000). Although the school board claims to have rescinded the policy, the record is devoid of any indication that this was done prior to the plaintiff’s demand or that such rescission was effectively communicated to students and parents.  The school board, by promulgating the rules, has created an entitlement and a right to certain procedures, on which a student may expect to rely. It may not refuse to apply the rules it has created.

This result is also supported by Illinois law. In 
Lewis v. Hayes
, 152 Ill. App. 3d 1020
, 
505 N.E.2d 408 (1987), this court found that a public employee could rely on rights concerning hiring established by administrative rules. The court found that the employee had acquired a property interest in the privileges created by the rules. 
Lewis
, 152 Ill. App. 3d at 1024, 505 N.E.2d at 411. We reached a similar result in 
Fernandes v. Nolen
, 228 Ill. App. 3d 424, 592 N.E.2d 1151 (1992). 

The defendants cite the case of 
Martin v. Shawano-Gresham School District
, 295 F.3d 701 (7th 
2002), for the proposition that school rules do not create rights that may be relied upon. We find the case to be inapposite and decline to follow it. Initially, we note that the decision is not binding on this court. More importantly, although every school day is valuable,  the case does not involve the deprivation of a significant educational right. In that case, the student was caught with a pack of cigarettes and was given a three-day suspension. In violation of school policy, her parents were not immediately notified of the suspension, and they were not called to pick the student up from school. Nevertheless, the court found that the school had complied with the “minimal” due process requirements mandated by 
Lopez
 for a short suspension
.  
Martin
, 295 F.3d at 706.

This case does not involve a short suspension but rather an expulsion for a year. The Supreme Court in 
Lopez
 acknowledged that longer suspensions and expulsions require more due process protections than short suspensions. 
Lopez
, 419 U.S. at 584, 42 L. Ed. 2d at 740, 95 S. Ct. at 741. Here, in light of the serious deprivation he faced, the plaintiff was entitled to significant due process protections such as notice of the charges and evidence against him, a meaningful opportunity to respond to the evidence and charges, and a chance to rely on duly enacted school policy. The process that resulted in Kevin Camlin's expulsion did not satisfy these fundamental requirements.

CONCLUSION

Since the plaintiff was deprived of significant due process rights in the expulsion process itself and in his denial of the protection of rules enacted by the school board pursuant to statutory authority, we find there were clearly ascertained rights in need of protection and that plaintiff had a reasonable likelihood of success on the merits of his case. Therefore, the preliminary injunction should have been granted. It was an abuse of discretion for the trial court to find otherwise. The judgment of the circuit court of Will County is reversed.

Reversed. 

LYTTON, J., concurs.

SCHMIDT, J., specially concurs. 

JUSTICE SCHMIDT, specially concurring:

I concur in the judgment of the court reversing the judgment of the circuit court of Will County.  In doing so, I agree with the majority's conclusion that the school board was bound to comply with its own drug/alcohol abuse policy.  There is nothing ambiguous about that policy, which provides that a first-time offender, even one accused of selling or distributing drugs, has the option of el
e
cting a 
treatment program in lieu of suspension.  Parents were required to read and agree to the policy.  I agree with the majority that while the school board was under no obligation to enact such a policy, once enacted, the school board was bound to live by it.  See 
Lewis v. Hayes
, 152 Ill. App. 3d 1020, 505 N.E.2d 408 (1987); 
Fernandes v. Nolen
, 228 Ill. App. 3d 424, 592 N.E.2d 1151 (1992).  I believe the school board's failure to follow its own rules when disciplining this student, is dispositive of this appeal.  

I part company with the majority when it holds that this student was otherwise denied due process in the expulsion process.  Kevin Camlin was aware that the proposed expulsion arose out of an incident involving marijuana at a school function on December 6, 2001.  He was also aware that Mike Barton and Miguel Savalez were the other two individuals involved in this incident.  

Camlin's parents were given a letter informing them of the charges and a hearing scheduled for January 24, 2002.  The hearing was continued to January 31, 2002, in order to satisfy the Camlins' request for additional time to locate legal counsel.  The Camlins were advised to bring Kevin to the hearing.

At the hearing, the Camlins appeared without legal counsel and without Kevin.  Again, it strikes me that the Camlins may have been lulled into this conduct by virtue of the language of the school drug policy indicating that their son, as a first-time offender, would have the option of electing a drug treatment program.  Therefore, my concurrence with the majority.  However, but for the school drug policy issue, I do not believe that Kevin Camlin was denied due process.  Minimum due process requires notice and a meaningful opportunity to be heard.
 Williams v. Illinois State Scholarship Comm’n
, 139 Ill. 2d 24, 563 N.E.2d 465 (1990).  It is not a denial of due process where a party fails to avail himself to that opportunity.  
People v. DeLuca
, 302 Ill. App. 3d 454, 706 N.E.2d 927 (1998), citing 
Campbell v. Cook
 
County Sheriff’s Merit Board
, 215 Ill. App. 3d 868, 576 N.E.2d 90 (1991).   He was given the opportunity to appear, to cross-examine witnesses, and to present his own evidence.  He failed to do so. 

While I cannot figure out exactly what the majority requires of a school district in an expulsion case, I believe the facts show that Kevin Camlin was aware of the nature of the charges against him, that being a drug-related incident involving himself, Mike Barton and Miguel Savalez
 on December 6, 2001.  The expulsion hearing was even continued to allow the Camlins to obtain counsel.  At the hearing, they not only failed to bring legal counsel, they failed to bring their son, Kevin Camlin.  They did not cross-examine witnesses or present any evidence.  The majority concludes that one can refuse to participate in a hearing and then complain that the hearing violated his due process rights.  I respectfully disagree.